STATE on complaint of DOERFLINGER vs. HILMANTEL.

*Registry law; certain provisions imperative.—Pleading: allegation as to votes illegally received.*

1. The provisions of the registry law (sec. 7 ch. 445, Laws of 1864), which forbid the vote of any person to be received at any annual election in this state, unless his name be on the registry made on a previous day, or unless he shall furnish the board of inspectors a certain affidavit and certain specified proof of his res-

idence in the district, are *imperative;* and all votes received in violation of those provisions will be rejected by the court in an action to try title to an office.

2. It is sufficient that the complaint in such an action states the *number* of votes in favor of the defendant, which were thus illegally received, without specifying the *names* of the persons by whom they were cast.

At the annual election for county officers of Milwaukee county, in November, 1866, *Hilmantel* received a majority of the votes cast for the office of clerk of the board of supervisors of said county ; and having received the certificate of election, he entered upon the duties of the office. *Doerflinger* was the opposing candidate for said office at that election. This action was brought to try *Hilmantel's* title to the office, it being alleged that a portion of the votes cast for him, greater in number than his majority, were received in violation of the provisions of the registry act, ch. 445, Laws of 1864. The pleadings are no longer on file in this court, having been sent down for the trial of an issue of fact, but the allegations of the complaint will sufficiently appear from the opinion. *Hilmantel* demurred to the complaint as not stating a cause of action, and also moved to have it made more definite and certain by inserting the names of the persons whose votes are alleged to have been illegally received.

Sec. 7, ch. 445, Laws of 1864, reads: "No vote shall be received at any annual election in this state, unless the name of the person offering to vote be on the registry made on the Tuesday or Wednesday preceding the election, unless the person offering to vote shall furnish to the board of inspectors his affidavit in writing giving his reasons for not appearing on the day for correcting the alphabetical list, *and prove by the oath of a householder of the district in which he offers his vote, that he knows such person to be an inhabitant of the district,* and, if in any incorporated city or village, giving the residence of such person within said district." Sec. 14 is as follows: "Any person who shall cause his name to be registered in more than one election

district, or who shall cause his name to be registered, knowing that he is not a qualified voter in the district where said registry is made, or who shall falsely personate any registered voter, and any person causing, aiding or abetting any person, in any manner, in either of said acts, shall be punished for each and every offense, by imprisonment in the state prison for not less than one year. All false swearing before said board of registration, shall be deemed willful and corrupt perjury, and, on conviction, punished as such. *If any member or officer of said board shall wilfully violate any of the provisions of this act,* or be guilty of any fraud in the execution of the duties of his office, *he shall be punished for each and every offense by imprisonment in the state prison for not less than one year.*"

*Mat. H. Carpenter, Jas. G. Jenkins* and *J. V. V. Platto,* for the demurrer and motion.

*Smith & Salomon* and *Byron Paine, contra.*

[The fuller written arguments having been filed on a motion for a rehearing, a synopsis of them will be given *infra.*]

DIXON, C. J. Section 7, ch. 445, General Laws of 1864, is admitted to be constitutional, and the only question is as to its construction and effect. This is a very important question. It is, whether it is a directory or compulsory statute—whether it is discretionary with the inspectors, the requirements as to affidavit and oath not being in all respects complied with, to receive the votes of persons whose names are not on the registry, or imperative upon them not to do so unless such requirements are strictly fulfilled. The allegation of the complaint is, that of the votes given and counted for the defendant in Milwaukee, an incorporated city, five hundred and forty-four and more were received from persons whose names were not on the register, no one of whom gave to the inspectors receiving his vote his residence within the district, either by his own affidavit or by the oath of a householder of such district. It is

furthermore alleged, that of those five hundred and forty-four votes, one hundred and forty-five were received from persons, no one of whom proved to the inspectors receiving his vote, by the oath of a householder of the district, that he knew such person to be an inhabitant of the district, nor did any one of them furnish the inspectors any proof upon oath that he was a resident of the election district. It will be seen from these statements, not that there was a total want of proof, or any attempt to evade the requirements of the act, but only that the proofs were in some particulars defective. It is not, therefore, a question whether the statute may be wholly disregarded or dispensed with by the inspectors, but whether, when an attempt is made in good faith to execute it, a mistake in the execution, or any departure, however slight, from the terms of the statute, will vitiate the proceedings and annul the votes so irregularly received. In other words, it is a question whether the voters are disfranchised by any such mere irregularity or error in the proceedings. This is the precise question, as I understand it. I say the precise question, because no fraud or intentional misconduct on the part of any one is alleged; nor is it alleged that there was any inherent disqualification in the persons who gave the votes. They were qualified electors of the district, entitled, under the constitution and laws, to vote at the election, except that their votes were not received in the form prescribed by the statute. As to one hundred and forty-five of them, the fact that they were inhabitants of the district was not proved before the inspectors; and as to the others, their particular places of residence within the district were not given. As to all of them, the inspectors may have acted upon their own knowledge of the facts, and thought that proof was unnecessary. Such being the technical, and, as it seemed to me, purely formal nature of the objections, I must say that I was surprised to hear counsel at the bar insist that those votes must now be rejected. I had not then examined the act, and

it was contrary to all my notions of the intention and effect of election laws, derived from the decisions of this and other courts upon other statutes on the same subject. I supposed the question before the courts always was, who received the greatest number of votes for the office from the legally qualified voters, without regard to any matter of mere form or want of form in the receiving, canvassing or return of the votes; and that to hold the contrary would be, as has been very pertinently said, to place a higher value on the statute regulation, than on the right itself—to sacrifice substance to form. This construction of former statutes, that they were directory and not imperative, and therefore not jurisdictional on the part of the officers conducting the elections, is well known. For the sake of justice upon the facts here pleaded, I regret that this act does not admit of the same construction. It seems certainly a very severe regulation which excludes the votes of legally qualified voters under such circumstances. But on examining the act, I am satisfied that it cannot be so construed. It is essentially an imperative statute, and deprives the inspectors of all jurisdiction to receive the votes of unregistered voters, unless the conditions as to the affidavit and oath are fully complied with. And first, it is to be observed that there is a material difference between this and former statutes. They were regulations of the time and manner of conducting elections, designed for the government of the officers having charge of the polls. No duty was imposed upon the voters except that of going to the polls and depositing their votes. It was considered that the voters ought not to forfeit their privileges or lose their votes by reason of the mistakes or misconduct of the officers, which it was out of the power of the voters to remedy or prevent. By this act, however, every voter is made or may become an agent in the execution of the law. Copies of the register as made by the board are filed in the office of the town, village or city clerk, and posted in some conspicu-

ous place in the room in which the meeting is held, so as to be accessible to any elector who may desire to examine the same or make copies thereof. On the Tuesday preceding the general election, a meeting of the board of registry is had at the place designated for holding the polls of election for the purpose of revising, correcting and completing the lists. Any elector of the district whose name has been omitted, may appear at such meeting and cause the same to be entered upon the register. If he does not so appear, and still desires to vote, he must furnish the inspectors at the polls his affidavit giving his reasons for not appearing on the day for the correction of the register, and likewise prove by the oath of a householder of the district that he knows him to be an inhabitant of the district; and, if in an incorporated village or city, give his residence within the district. In this matter of a voter whose name has been omitted, and who has not appeared on the day for the correction of the register, the burden of answering the requirements of the law by furnishing the affidavit and proof is thrown upon the voter himself. He is presumed to know the law, and must go to the polls prepared to comply with its conditions; and if he does not, and his vote is lost, it may, so far as it is the fault of any one, with justice be said to be his own fault. It is in the nature of a penalty imposed by the law for his neglect to do what is required of him. The inspectors cannot receive his vote, and, if they cannot, it cannot afterwards be received and counted by the courts.

And next it is to be observed, that it is a negative statute. It has been said on very high authority, that negative words will make a statute imperative. Dwarris on Statutes, 715 (7 Law Lib., 55), and cases cited. The words of the act are: "No vote shall be received at any annual election in this state, unless," &c. It is difficult to conceive any language more strongly imperative than this.

Again, if we consider the mischief complained of, and the

remedy provided, it will be seen that the forms prescribed are of the very essence of the statute. It is entitled, "An act to guard against the abuse of the elective franchise, and to preserve the purity of elections, by a registration of electors." Abuses cannot be guarded against nor rights preserved by statute, without resorting to proceedings more or less formal. Forms thus prescribed are the substance of the thing enacted. If we take, for example, the statute to prevent frauds and perjuries, commonly called the statute of frauds, what is it but the requirement of mere formalities? The agreement may have been made, the consideration fixed, and all the essentials of a valid contract exist, but the transaction has not taken on the outward form prescribed by the statute, and just as prescribed, and therefore it is void. The courts cannot dispense with the statute for the sake of what otherwise might be just in particular cases; but the rights of all must be determined according as they have pursued or failed to pursue the prescribed forms. The same observations might be made of numerous other enactments, and are true of this. The disability or disfranchisement is inseparable from the necessary protection; perhaps it may be said that the protection can only be afforded by imposing the disability. Hold the act to be directory, and allow the electors to vote without their names being registered, and without the affidavit and oath prescribed in case they are not, the object of the legislature would be entirely defeated. The effect of such construction would be fatal to all protective legislation, and would leave the election laws precisely as they stood before this statute was enacted.

For these reasons, I am of opinion that the demurrer to the complaint must be overruled.

A motion is also made to make the complaint more definite and certain, because the names of the persons whose votes were illegally received are not given. Such a recitation of names in a complaint would be inconvenient and impracticable,

State on complaint of Doerflinger vs. Hilmantel.

and there is no precedent for it. On the other hand, the authorities cited by the counsel for the plaintiff show that the form of statement adopted is the correct one. No greater particularity can be required now in the complaint, than was requisite under the old practice in the replication. A list of the names would be very convenient for the defendant in preparing for trial, and might sometimes conduce very materially to the ends of justice. What seems to me to be needed in such cases, is some legislation requiring the parties to furnish such lists a certain time before the trial takes place.

I think the motion must also be overruled.

*By the Court.*—Ordered accordingly.

On a motion for a rehearing, the counsel for the defendant, conceding that the inspectors had no discretion to receive votes except upon the exact conditions defined in the registry act, and that as to them the act is mandatory and penal in the highest degree, contended that it did not at all follow from this that a resident of the district constitutionally qualified to vote, and who has actually voted, should be punished by losing the vote so cast, because the board required no affidavit of him as it was their duty to do. Our statutes (R. S., ch. 109, secs. 6 and 11) forbid the solemnization of marriage without an examination of one of the parties under oath as to the legality of the same, and imposes a penalty of $500 upon any judge or minister, &c., who shall disregard this provision. Yet no one supposes that a marriage solemnized in disregard of the provision, between persons who were in fact competent to enter into the relation, would be void. *King v. Birmingham*, 8 Barn. & Cress., 35; *Milford v. Worcester*, 7 Mass., 54–55. In such cases, nothing short of an express enactment to that effect will enable the courts to declare the marriage void. The constitutional right of the citizen to vote is not to be taken away by implication. If the act had declared that the voter, who, not

having his name on the list, should vote without first producing an affidavit, &c., should be imprisoned, but had failed to declare that his vote should not be counted, *the courts could not add this penalty to that fixed by the act.* But the act does not punish the voter; it punishes only the officers who neglect their duty; and the consequence now contended for, *that the vote shall be void,* is not declared by it. Courts will not construe a statute so as to effect a penalty or forfeiture *not therein declared.* "A penal law shall not be extended by construction. * * No man incurs a penalty unless the act which subjects him to it is clearly *both within the spirit and the letter* of the statute imposing such penalty." Dwarris, p. 736; 3 Bing., 589; Smith's Comm., 861; *Jones v. Estis,* 2 Johns., 379; *U. S. v. Wiltberger,* 5 Wheat., 76. It may be said that had the inspectors done their duty, they would have refused to receive these votes, and then the voters would equally have lost their votes. But, (1.) This would have resulted from the execution of the law itself; the forfeiture would have been *within the letter* as well as the spirit of the law. (2.) Had the inspectors done their duty, the voter might have furnished the requisite affidavit; and it is a fraud upon him to receive his vote without objection, and when the opportunity to make the objection is passed, then to reject the vote. (3.) The legislature may have refused to declare the vote void, because then the inspector might receive it illegally for the very purpose of having it cast out; knowing that if he made the objection, the voter could and would immediately supply the proof. (4.) The legislature may also have refused to declare the vote void, because of the difficulty, danger and temptation of perjury, from allowing parol evidence of the voter as to the candidate for whom his vote was cast, or the hardship of enabling a defeated candidate to compel voters to testify on that point. 2. The act, as construed by the court, is unconstitutional. Sec. 1, Art III of our constitution, declares that "Every male person

of the age of twenty-one years or upwards,  *  *  who shall have resided in the state for one year next preceding any election, shall be deemed a qualified elector at such election." Sec. 6 authorizes the legislature to exclude by statute from the right of suffrage all persons convicted of certain offenses, and to deprive persons interested in any wager depending on the result of an election, of the right to vote at such election; and these are the only cases in which the legislature is authorized to take away this right. In other cases it may *regulate the exercise* of this right; but such regulation, to be constitutional, must be reasonable in itself, and calculated to facilitate, not to impair, the exercise of the right. It follows that any neglect of the provisions of the law regulating the exercise of this right constitutes a mere irregularity, and does not affect the right itself. If the voter has exercised a constitutional right, and has only done so in an irregular manner, or has disregarded some of the forms prescribed for its exercise, this will not work a forfeiture of the right itself. Hence it is held by all courts in America, as well as by parliament in England, and the congress of the United States, and all our state legislatures, that no matter how great may have been the irregularities attending an election, if the substantial end in view has been reached, if the legal voters have voted, the person who has received the highest number of votes is elected. But the court construes this act not as a mere regulation of the constitutional right, a violation of which would be a mere irregularity, but as *going to the right itself*—as prescribing *qualifications for voters.* It holds that by failing to furnish the affidavit the voter has forfeited the right to vote; that his vote is to be considered like one cast by a minor or non-resident of the state, *wrongful in itself*, and wholly void; that he is deprived of the right to vote, under the act, as a "penalty" for his neglect to offer an affidavit, &c. But the legislature can neither *change the qualifications of voters*, nor exclude any elector from the right of

suffrage except on *conviction* of some of the offenses enumerated in sec. 6, art. III. As construed by the court, therefore, the act is clearly unconstitutional. 3. Counsel further contended, that whether construed as a regulation, or as imposing a penalty, the act was void in so far as it required an act which it was not in the power of the voter to perform. But this act requires the unregistered voter, before his oath can be received, to "prove by the oath of a householder of the district * * that he knows such person to be an inhabitant of the district," &c. Suppose a voter, who voted at the last election and therefore has a right to presume that his name is on the list, has been prevented by sickness or other unavoidable cause from appearing to have the list corrected, and presents himself to vote. He is a resident, and has all the other qualifications required; but he must *prove* the fact by another—a householder of the district. This he has not the *power to do.* If he can find a householder who will *volunteer* to swear, the oath may be administered by the inspectors, &c. ; but if not, he is remediless. This is unreasonable as a regulation, and unjust as a penal statute.—The complaint does not allege that the persons who voted without giving the affidavit and oath, &c., were not prevented by sickness or other unavoidable accident from having the list corrected; does not show them to have wilfully neglected to comply with the law, which is of the essence of any crime or wrong to which a penalty could attach; nor does it show that they did not endeavor to induce householders to swear for them. The presumption is against the pleader; and the court is not to extend statutes by construction so as to work forfeitures not declared therein, and then *presume* the facts which will subject a citizen to such forfeiture.

The counsel for the complainant, in reply, contended that the argument from the validity of a marriage solemnized in violation of the statute was misleading, because, (1.) The marriage contract is *sui generis*, and is valid at common law with-

out any ceremony of solemnization, while the elective franchise is founded upon positive regulation only. (2.) Courts, for obvious reasons, go farther in upholding the validity of marriage contracts than of any other kind of contracts; and hold statutory provisions of the character referred to directory rather than mandatory. These reasons grow out of the nature and consequences of the marriage itself, and do not exist in reference to most other statutes, and certainly not in reference to the registry act. (3.) The statutory provision in relation to marriage prescribes a duty for the officer only, while the registry act requires certain acts to be done by the voter as a condition to the exercise of the right of suffrage. 2. As to the assumption that this is a *penal statute*, and the argument that such statutes are not to be extended by construction, (1.) The court has not extended it. They have simply enforced the provision that no vote shall be received except upon the prescribed conditions, and the conclusion inevitably resulting from it, that if the vote cannot be received, it cannot be counted. (2.) The statutory provision in question is *not* penal. The language of the opinion, that the loss of his vote by one who does not comply with the statute, " is in the nature of a penalty for his neglect," is correct, but does not imply that this is a penal statute in the legal sense of that term. If a man attempts to devise real estate by a will, and neglects the legal formalities, the penalty is that he does not succeed. If a man, having a right to vote on complying with certain conditions, neglects to comply with them, the result or penalty is that he loses his vote. But in neither case is the statute prescribing the forms or conditions a penal statute. 3. The law is constitutional. It does not " exclude any elector from the right of suffrage." It does not " prescribe any new qualifications for voters," but only new formalities to be observed by those possessing the constitutional qualifications. *State ex rel. Cothren v. Lean,* 9 Wis., 283–4. The statute (not the constitution) requires

that the elector shall vote *in person;* that he shall vote only in the town or ward where he resides, and only at a particular place and on a particular day; and if (even from sickness or other unavoidable cause) he fails to be present in person, at the right time and place, he loses his vote. Will it be claimed that these provisions of statute create new qualifications, or that they deprive citizens of the right of suffrage? It is doubtful whether a court can pronounce acts of the legislature unconstitutional merely because they seem to it unreasonable; but there is nothing unreasonable in the provisions of the registry law. They are such as experience shows to be absolutely essential to the protection of the ballot box, and are similar to laws which have been held constitutional in other states. In some of them, as Massachusetts and New York, the voter was absolutely required to be registered on certain days; yet the act was valid. *Capen v. Foster*, 12 Pick., 485. The permission given the non-registered voter by our statute to deposit his vote on complying with certain requirements, need not have been given at all; and therefore the contingency suggested, of his inability to comply with one of those requirements, cannot render the statute unconstitutional. Besides, the contingency is too remote and improbable for serious consideration. It might with much more reason be urged, that it is unconstitutional to require the voter to appear in person at the polls, because if he is sick, so that he cannot get there, he loses his vote. Suppose the statute should require all ballots to be in writing: could any voter object to its validity on the ground that he could not write himself, and might not be able to get anybody to write his ballot for him?

The motion for a rehearing was denied.