## COURT OF APPEALS,
### March, 1909.

## THE PEOPLE v. ROCHESTER RAILWAY & LIGHT COMPANY.

(195 N. Y. 102.)

(1). MANSLAUGHTER—CORPORATION CANNOT BE GUILTY OF. .

A corporation may in many instances be charged criminally with the unlawful purposes and motives of agents through whom it conducts its business, while they are acting in its behalf, so long as they act within the scope of their authority, real or apparent.

(2). SAME—PENAL CODE, SECTION 179.

A definition of certain forms of manslaughter might be formulated which would be applicable to a corporation and make it criminally liable for various acts of misfeasance and nonfeasance when causing death. The present Penal Code, however, section 179, defines homicide as " the killing of one human being by the act, procurement or omission of another," meaning another human being, and subdivision 3 of section 193 makes " such homicide " manslaughter in the second degree under certain circumstances. Under these definitions a corporation cannot be guilty of manslaughter.

*People v. Rochester Railway & Light Co.,* 129 App. Div. 843, affirmed.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the Fourth Judicial Department, entered January 23, 1909, which affirmed a judgment of the Monroe County Court sustaining a demurrer to an indictment of the defendant for the crime of manslaughter in the second degree.

The facts, so far as material, are stated in the opinion.

*Howard H. Widener, District Attorney (Charles B. Bechtold, of counsel), for appellant.* A corporation can be legally indicted for the crime of manslaughter, second degree. Penal Code, §§ 13, 179, 180; *Risley v. Phoenix Bank,* 83 N. Y. 318; *People v. W. D. Inst.,* 192 N. Y. 454; *B., C. & M. R. R. Co.*

*v. The State,* 32 N. H. 215; *State v. B. & M. R. R. Co.,* 58
N. H. 410; *Comm. v. B. & L. R. R. Corp.,* 134 Mass. 211;
*State v. G. T. R. R. Co.,* 58 Me. 176; *State v. City of Port-
land,* 74 Me. 268; *T. N. Co. v. Comm.,* 172 Mass. 294; *Wales
v. City of Muscatine,* 4 Iowa, 302; *Comm. v. P. C. A. & M.
Assn.,* 92 Ky. 197.

*Daniel M. Beach,* for respondent. A corporation cannot be
legally indicted for the crime of manslaughter, second degree.
*Hintermeister v. F. Nat. Bank,* 64 N. Y. 212; *Cameron v.
Seamon,* 69 N. Y. 396; Penal Code, §§ 179, 180, 193; *People
v. Moran,* 123 N. Y. 254; *Queen v. U. C. Co.,* 3 Canadian
Cr. Cas. 523; *Queen v. G. W. L. Co.,* 3 Canadian Cr. Cas. 514;
2 Morawetz on Corp. (2d ed.), 702; Clark on Corp., 200;
*Comm. v. P. S. Ry. Co.,* 24 Penn. C. Rep. 25; *F. S. Inst. v.
Nat. Bank,* 80 N. Y. 162.

HISCOCK, J.:

The respondent has been indicted for the crime of man-
slaughter in the second degree because, as alleged, it installed
certain apparatus in a residence in Rochester in such a grossly
improper, unskilled and negligent manner that gases escaped
and caused the death of an inmate.

The demurrer to the indictment has presented the question
whether a corporation may be thus indicted for manslaughter,
under section 193 of the Penal Code.

Before proceeding to the interpretation of this specific pro-
vision we shall consider very briefly the general question dis-
cussed by the parties whether a corporation is capable of com-
mitting in any form such a crime as that of manslaughter.

Of the correctness of the proposition urged in behalf of the
People that it may do so, subject to various limitations, we
entertain no doubt.

Some of the earlier writers on the common law held that a

corporation could not commit a crime.   Blackstone in his Commentaries, Book 1, page 476, stated:   " A corporation cannot commit treason or felony, or other crime, in its corporate capacity: though its members may, in their distinct individual capacities."   And Lord Chief Justice HOLT (*Anonymous*, 12 Modern, 559) is said to have held that " a corporation is not indictable, but the particular members of it are."   In modern times, however, the courts and text writers quite universally have reached an opposite conclusion.   A corporation may be indicted either for nonfeasance or misfeasance, the obvious and general limitations upon this liability being in the former case that it shall be capable of doing the act for non-performance of which it is charged, and that in the second case the act for the performance of which it is charged shall not be one of which performance is clearly and totally beyond its authorized powers. Bishop's New Criminal Law, secs. 421, 422.

The instances in which it has been held that a corporation might be liable criminally simply because it did or did not perform some act, and where no element of intent was supposed to be involved, are so familiar that any extended reference to them is entirely unnecessary.   The latest authority in this State upholding such liability is found in the case of *People v. Woodbury Dermatological Institute*, 192 N. Y. 455, where it was held that a corporation might be punished criminally for disobeying the statute providing that "any person not a registered physician who shall advertise to practice medicine, shall be guilty of a misdemeanor."   There was involved no question of intent, but simply disobedience of a statutory prohibition against doing certain acts.

At times courts have halted somewhat at the suggestion that a corporation could commit a crime whereof the element of intent was an essential ingredient.   But this doctrine, again with certain limitations, may now be regarded as established, and there is nothing therein which is either unjust or illogical.

Of course, it has been fully recognized that there are many crimes so involving personal, malicious intent and acts *ultra vires* that a corporation manifestly could not commit them. Wharton's Criminal Law, 9th ed., sec. 91; Morawetz on Private Corporations, 2nd ed., sec. 732 *et seq.* But a corporation, generally speaking, is liable in civil proceedings for the conduct of the agents through whom it conducts its business so long as they act within the scope of their authority, real or apparent, and it is but a step further in the same direction to hold that in many instances it may be charged criminally with the unlawful purposes and motives of such agents while so acting in its behalf.

Only a few citations need be made of eminent authorities approving and illustrating this rule.

Mr. Bishop, in his New Criminal Law, section 417, says: "'But within the sphere of its corporate capacity, and to an undefined extent beyond, whenever it assumes to act as a corporation it has the same capabilities of criminal intent and of act—in other words, of crime— as an individual man sustaining to the thing the like relations. * * * Some have stumbled on the seeming impossibility of the artificial and soulless being, called a corporation, having an evil mind or criminal intent. * * * But the author explains in another work that since a corporation acts by its officers and agents, their purposes, motives and intent are just as much those of the corporation as are the things done."

In *Telegram Newspaper Co. v. Commonwealth*, 172 Mass. 294, a corporation was held liable for a criminal contempt. In the course of the opinion it was said: "It is contended that a corporation cannot be guilty of a criminal contempt although it may be fined for what is called a civil contempt. It is said that an intent cannot be imputed to a corporation in criminal proceedings. * * * We think that a corporation may be liable criminally for certain offenses of which a specific intent

may be a necessary element.   There is no more difficulty in imputing to a corporation a specific intent in criminal proceedings than in civil."

The most recent authority upon this subject is found in the decision of the Supreme Court of the United States in the case of *New York Central & Hudson River Railroad Company, plaintiff in error, v. United States,* decided in February, 1909. In that case the railroad company and one of its officials had been convicted of the payment of rebates to a shipper.   On the argument of the appeal it was urged that inasmuch as no authority was shown by the board of directors or the stockholders for the criminal acts of the agents of the company in contracting for and giving rebates, such acts should not be lawfully charged against the corporation, or as expressed in the opinion, "That owing to the. nature and character of its organization and the extent of its power and authority, a corporation cannot commit a crime of the nature charged in this case."   The court then said: "In this case we are to consider the criminal responsibility of a corporation for an act done while an authorized agent of the company is exercising the authority conferred upon him.   It was admitted   *   *   * that at the time mentioned in the indictments the general freight traffic manager and the assistant freight traffic manager were authorized to establish rates at which freight should be carried.   *   *   *   Thus the subject matter of making and fixing rates was within the scope and authority of the employment of the agents of the company whose acts in this connection are sought to be charged upon the company.   Thus clothed with authority the agents were bound to respect the regulation of interstate commerce enacted by Congress requiring the filing and publication of rates and punishing departures therefrom. Applying the principle governing civil liability, we go only a step further in holding that the act of the agent, while exercising the authority delegated to him to make rates for trans-

portation, may be controlled, in the interest of public policy, by imputing his act to his employer and imposing penalties upon the corporation for which he is acting in the premises. It is true that there are some crimes which in their nature cannot be committed by corporations. But there is a large class of offenses * * * wherein the crime consists in purposely doing the things prohibited by statute. In that class of crimes we see no good reason why corporations may not be· held responsible for and charged with the knowledge and purposes of their agents, acting within the authority conferred upon them."

Within the principles thus and elsewhere declared, we have do doubt that a definition of certain forms of manslaughter might have been formulated which would be applicable to a corporation, and make it criminally liable for various acts of misfeasance and nonfeasance when resulting in death, and amongst which very probably might be included conduct in its substance similar to that here charged against the respondent. But this being so, the question still confronts us whether corporations have been so made liable for the crime of manslaughter as now expressly defined in the section alone relied on by the People, and this question, we think, must be decisively answered in the negative.

Section 179 of the Penal Code defines homicide as "the killing of one human being by the act, procurement or omission of another." We think that this final word "another" naturally and clearly means a second or additional member of the same kind or class alone referred to by the preceding words, namely, another human being, and that we should not interpret it as appellant asks us to, as meaning another "person," which might then include corporations. It seems to us that it would be a violent strain upon a criminal statute to construe this word as meaning an agency of some kind other than that already mentioned or referred to, and as bridging over a radical

transition from human beings to corporations. Therefore we construe this definition of homicide as meaning the killing of one human being by another human being.

Section 180 says that "Homicide is either: 1. Murder; 2. Manslaughter;" etc. Section 193 says that "Such homicide," that is, "the killing of one human being * * * by another," is manslaughter in the second degree when committed "without a design to effect death. * * * 3. By any act, procurement or culpable negligence of any person, which * * * does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree." Thus we have the underlying and fundamental definition of homicide as the killing of one human being by another human being, and out of this basic act thus defined and according to the circumstances which accompany it are established crimes of varying degree including that of manslaughter for which the respondent has been indicted. In the definition of these crimes as contained in the sections under consideration (secs. 183-193) we do not discover any evidence of an intent on the part of the legislature to abandon the limitation of its enactments to human beings or to include a corporation as a criminal. Many of these sections could not by any possibility apply to a corporation and in our opinion subdivision 3 of section 193 relating to manslaughter manifestly does not. It is true that the term "person" used therein may at times include corporations, but that is not the case here. The surrounding and related sections are not calculated to induce the belief that it has any such meaning, and the classification of manslaughter as a form of homicide and the definition of homicide already quoted forbid it.

The judgment should be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.