Vulcan Last Company and another, Plaintiffs in error, vs. The State, Defendant in error.

*December 10, 1927—January 10, 1928.*

*Elections: Threatening employees to influence votes: What constitutes "election:" Referendum: Criminal responsibility of corporations.*

1. The offense of attempting to influence the votes of employees by threatening their discharge or a change in their wages, in violation of sec. 103.18, Stats., is not an offense against elections, but an offense against employees.   p. 639.
2. Evidence that the superintendent of one of the plaintiffs in error, a corporation, threatened employees with discharge in an attempt to influence them to cast their votes for the issuance of waterworks bonds at an election to be held at a later date, is *held* sufficient to sustain a conviction under sec. 103.18, Stats., of attempting to influence a voter to give or withhold his vote at an election.   p. 639.
3. The employer cannot escape liability by a collateral attack upon the election because the proof does not affirmatively show

that every step required by the statutes in the calling of the election was in fact taken; and a referendum upon the question of issuing bonds for the construction of waterworks is an "election" within the meaning of said sec. 103.18, Stats. p. 639.
4. Neither the superintendent nor the corporation is relieved from liability because the election had not been formally called and notice of the election posted when the threat of discharge was made, where the election had been provided for and was in fact held. p. 640.
5. To constitute the offense of attempting to influence the vote of an employee at an election by threatening his discharge, the attempt must be to influence an employee to give or to withhold his vote for a particular man or measure. p. 640.
6. When the agent of a corporation acts within the scope of his authority his acts are the acts of the corporation, for which the corporation is liable both civilly and criminally, although the act of the agent may not have been expressly authorized by the corporation, or even if it has expressly forbidden the agent to act in the manner that made it answerable. p. 643.

ERROR to review a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

The *Vulcan Last Company* and *Cecil Knott* were convicted of an attempt to influence the votes of the employees of the *Vulcan Last Company* by threatening to discharge them if they voted contrary to the interests of the company at a referendum election.

The *Vulcan Last Company* desired to have the city of Crandon, Wisconsin, install waterworks in order that the plant of the company might have fire protection. The matter was considered by the common council. The record of the council discloses that the following action was taken:

" 'Mr. L. Carter then moved that a vote be taken on the adoption and final passage of the following resolution, which was offered and read at the regular meeting of the common council held on April 6, 1926, and which was published by order of the common council on April 8, 22, and 29, 1926, in the official paper:

" 'Resolved by the common council of the city of Crandon, Forest county, Wisconsin, that for the purpose of con-

structing and sustaining waterworks plants and construction and improvement of water mains in said city, the city of Crandon issue negotiable bonds of said city in the sum of $30,000, in denominations of $1,000 each, bearing interest at the rate of 4¾ per cent. per annum, payable semi-annually, said bonds to be dated April 1, 1926, and to be due and payable $1,000 April 1, 1936, $2,000 April 1, 1937, and $3,000 each year thereafter from .April 1, 1938, to April 1, 1946, both inclusive; both principal and interest payable at First Wisconsin National Bank, Milwaukee, Wisconsin.' "

The resolution set forth above was adopted by a vote of nine to one. The one negative vote was cast by an employee of the *Vulcan Last Company.* The next noon the employees of the company were called together in the plant by *Cecil Knott,* who was the superintendent. He told the men of the interest which the company had in the establishment of the waterworks system and stated that any man who votes against the interests of the company would be discharged. *Mr. Knott* then stated that the employee, who was the alderman who had voted against the resolution at the council meeting the preceding evening, could no longer work for the company. Then, in the presence of the men, *Mr. Knott* directed this employee to go to the office and get his time.

Thereafter notices were posted calling a special election to vote upon the question of issuing bonds to construct the waterworks, and the election was duly held.

For the plaintiffs in error there was a brief by *Eberlein & Larson* of Shawano and *J. A. Walsh* of Crandon, and oral argument by *Albert S. Larson.*

For the defendant in error there was a brief by *Harold Krueger,* district attorney of Forest county, *G. F. Clifford,* assistant district attorney, the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general; and the cause was argued orally by *Mr. Clifford* and *Mr. Messerschmidt.*

STEVENS, J.    (1) The offense of which defendants were found guilty is defined by sec. 103.18, Stats., as follows:

"No person shall, by threatening to discharge a person from his employment or threatening to reduce the wages of a person or by promising to give employment at higher wages to a person, attempt to influence a qualified voter to give or withhold his vote at an election."

This section is a part of the chapter of the statutes devoted to the protection of the rights of employees.    The offense defined by this section is not one against elections. It is an offense against employees.    The indictment does not charge an offense against the election laws.    The offense charged is that of attempting unlawfully to interfere with the right of every freeman to cast his vote as the dictates of his own conscience shall determine, untrammeled by influence exerted by his employer.

The evidence establishes the fact that these threats were made in an attempt to influence the employees of the *Vulcan Last Company* to give their votes for the waterworks bonds at an election which was in fact held at a later date.    That constituted an offense under the statutes.    One who violates this statute cannot escape liability for his unlawful acts by a collateral attack upon the election because the proof does not affirmatively show that every step required by the statutes in the calling of the election was in fact taken.

The cases on which the defendants rely are all decisions involving offenses against election laws.    None of them consider such an offense as that here charged, which is an offense against the rights of employees.

(2) The referendum upon the question of issuing bonds for the construction of the waterworks was "an election." "An 'election,' within the meaning of the statutes of this state, includes a referendum vote to decide a question of policy such as the issuance of bonds, . . . just as well as it includes an ordinary election to choose between candidates

for public office. The very first definition given of the word in *Brown v. Phillips* (71 Wis. 239, 36 N. W. 242) is 'the act of choosing; choice.' Whether it is a choice between alternative policies or a choice between persons, it is equally an election. If further argument were needed on this proposition it would be readily found in the fact that such referendum votes are always termed 'elections' by our statutes." *Hall v. Madison,* 128 Wis. 132, 137, 138, 107 N. W. 31.

As was so aptly said by the trial court: "This court can perceive no distinction between that case and this. The fact that this is a criminal case does not authorize the court to place a different construction upon the same provision of the statute. This court has no sympathy with the idea of so construing a statute as to make it impotent so far as criminal prosecution is concerned while making it perfectly valid so far as civil rights are concerned."

(3) The fact that the election had not been formally called and the notice of election posted when the threat to discharge was made does not relieve defendants from liability. The election had been provided for and it was in fact held. Defendants' contention was effectively disposed of by the trial court when it said: "It can be no less an offense to exercise influence by threats immediately before the posting of notice of election than to do the same act immediately after the posting of notice of election."

(4) The gist of the offense defined by sec. 103.18 of the Statutes is the attempt by threats or promises to influence a voter *"to give or withhold his vote at an election."* The language just quoted was chosen with care so that it would not penalize any employer who attempts to influence his men to perform their duty as citizens by going to the polls to cast their ballots, provided that no attempt is made to control their choice when the ballots are cast. The thing that was safeguarded was the untrammeled right of the electors to

vote for such men and for such measures as they desire to support. The thing that was prohibited was the attempt to impose the will of the employer upon the employee when the latter was determining whether he would "give or withhold *his vote*" for any candidate or for any measure submitted to the electors for approval.

No offense under the statute is committed unless the employer, by threats to discharge or to reduce wages or by promising employment at higher wages, attempts to influence his employee to give his vote for a particular man or measure or to withhold his vote from any man or measure either by voting for another candidate or by voting against a given measure or by absenting himself from the polls entirely.

It would be difficult to stage a scene which would impress the minds of the men more forcibly with the threat to discharge if they did not vote for the waterworks bonds than that which was enacted before them, which ended with the dramatic discharge of the offending employee who had voted against the interests of the company in the meeting of the common council on the previous evening.

(5) The only question that remains for consideration is whether the *Vulcan Last Company* was properly convicted of a violation of the statute. "Some of the earlier writers on common law held the law to be that a corporation could not commit a crime. It is said to have been held by Lord Chief Justice HOLT (*Anonymous,* 12 Modern, 559) that 'a corporation is not indictable, although the particular members of it are.' In Blackstone's Commentaries, ch. 18, sec. 12, we find it stated: 'A corporation cannot commit treason, or felony, or other crime in its corporate capacity, though its members may in their distinct individual capacities.' The modern authority, universally, so far as we know, is the other way. In considering the subject, Bishop's New Criminal Law, § 417, devotes a chapter to the capac-

ity of corporations to commit crime, and states the law to be: 'Since a corporation acts by its officers and agents, their purposes, motives, and intent are just as much those of the corporation as are the things done. If, for example, the invisible, intangible essence of air, which we term a corporation, can level mountains, fill up valleys, lay down iron tracks, and run railroad cars on them, it can intend to do it, and can act therein as well viciously as virtuously.' " *New York Cent. & H. R. R. Co. v. U. S.* 212 U. S. 481, 492, 493, 29 Sup. Ct. 304. See, also, *People v. Rochester R. & L. Co.* 195 N. Y. 102, 88 N. E. 22.

The ever-increasing use of the corporate form of management in business and industrial enterprises made necessary this change in the ancient rule that a corporation was incapable of committing crime. "It is true that there are some crimes which in their nature cannot be committed by corporations. But there is a large class of offenses, . . . wherein the crime consists in purposely doing the things prohibited by statute. In that class of crimes we see no good reason why corporations may not be held responsible for and charged with the knowledge and purposes of their agents, acting within the authority conferred upon them. . . . If it were not so, many offenses might go unpunished and acts be committed in violation of law, where, as in the present case, the statute requires all persons, corporate or private, to refrain from certain practices forbidden in the interest of public policy." *New York Cent. & H. R. R. Co. v. U. S.* 212 U. S. 481, 494, 495, 29 Sup. Ct. 304.

From the very nature of the corporate organization there must of necessity be certain criminal offenses for which punishment cannot be imposed upon a corporation because of the obvious physical difficulty of rendering a corporation amenable to corporal punishment or imprisonment. This limitation upon the power to punish a corporation "does not depend upon the difficulty of imputing evil intent, but upon

Vulcan Last Co. v. State, 194 Wis. 636.

the impossibility of visiting upon corporations the punishments usually prescribed for greater crimes. The same law that creates a corporation may create the crime, and to assert that the legislature cannot punish its own creature because it cannot make a creature capable of violating the law does not, in my opinion, bear discussion." 5 Fletcher, Cyc. Corp. p. 5390.

The earlier cases attempt to distinguish between acts of nonfeasance and those of misfeasance so far as the right to punish corporations criminally is concerned. But it is now the established rule that "a corporation may be indicted either for nonfeasance or misfeasance, the obvious and general limitations upon this liability being in the former case that it shall be capable of doing the act for nonperformance of which it is charged, and that in the second case the act for the performance of which it is charged shall not be one of which performance is clearly and totally beyond its authorized powers." *People v. Rochester R. & L. Co.* 195 N. Y. 102, 104, 88 N. E. 22, 23.

Corporations must of necessity act through their agents. When these agents act within the scope of their authority their acts are the acts of the corporation, for which the corporation is liable both civilly and criminally. If the acts are within the scope of the authority of the agent, the corporation is liable criminally for the act although the act may not have been expressly authorized by the corporation, even if the corporation has expressly forbidden its agent to act in the manner that made it answerable to punishment under the criminal law. *Overland C. M. Co. v. People,* 32 Colo. 263, 268, 75 Pac. 924; *State v. Louisville & N. R. Co.* 91 Tenn. 445, 19 S. W. 229.

The statute here under consideration prohibits any "person" from attempting to influence a voter in the manner therein prescribed. By sub. (12) of sec. 370.01 of the Statutes it is provided that the word "person" may extend

to and be applied to bodies corporate as well as to individuals. "When a statute in general terms prohibits the doing of an act which can be performed by a corporation, and does not expressly exempt corporations from its provisions, there is no reason why such statute should be construed as not applying to them, when the punishment provided for its infraction is one that can be inflicted upon a corporation,—as, for instance, a fine. . . . Corporations are therefore within the letter, and, as it is as much against the policy of the law for a corporation to violate these provisions as for a natural person so to do, they are also within the spirit of this statute; and no reason is perceived why a corporation which does the prohibited act should be exempt from the punishment prescribed therefor.   If the law should receive the construction contended for by the defendant, the result would be that a corporation . . . would be given a privilege denied to a natural person.   Such an intention should not be imputed" to legislation "unless its language will admit of no other interpretation."   *U. S. v. John Kelso Co.* 86 Fed. 304, 306, 307.

"*Prima facie,* the word 'person,' in a penal statute which is intended to inhibit an act, means 'person in law;' that is, an artificial, as well as a natural, person, and therefore includes corporations, if they are within the spirit and purpose of the statute."   *Overland C. M. Co. v. People,* 32 Colo. 263, 267, 75 Pac. 924.

So far as the purpose to be accomplished by this statute is concerned—that of protecting employees from interference on the part of their employers in the exercise of their rights of citizenship,—it can make no difference whether the employer is a corporation or an individual.   It would be equally detrimental to the rights of the employee whether the attempt to influence his vote was made by a corporation employer or by an individual.   *Overland C. M. Co. v. People,* 32 Colo. 263, 267, 268, 75 Pac. 924.

The rule that a corporation is liable for the acts of its

agents performed in violation of law and within the scope of the agent's authority finds illustration in cases where the corporation was held liable criminally because its agents had violated the child-labor law (*Overland C. M. Co. v. People,* 32 Colo. 263, 268, 75 Pac. 924); the eight-hour law (*U. S. v. John Kelso Co.* 86 Fed. 304, 306, 307); the law prohibiting rebates (*New York Cent. & H. R. R. Co. v. U. S.* 212 U. S. 481, 489, 29 Sup. Ct. 304); the law prohibiting usury (*State v. First Nat. Bank,* 2 S. Dak. 568, 570, 51 N. W. 587); the espionage act (*U. S. v. American Socialist Soc.* 260 Fed. 885, 887), and many other similar cases.

In the case at bar *Mr. Knott* was the superintendent and manager of the plant who had full authority to hire and discharge men. The acts complained of had to do with the employment of the men who operated the plant. He was clearly acting within the scope of his authority to hire and to fire men when he violated the provisions of sec. 103.18 of the Statutes. In order to render the corporation liable for his acts it was not essential that it should have expressly empowered him to make the threat to discharge those who voted against the interests of the company. "A corporation is held responsible for acts not within the agent's corporate powers strictly construed, but which the agent has assumed to perform for the corporation when employing the corporate powers actually authorized." *New York Cent. & H. R. R. Co. v. U. S.* 212 U. S. 481, 493, 494, 29 Sup. Ct. 304.

Under the well established modern rule the threats made by *Mr. Knott* to discharge men who voted against the interests of the company subjected the corporation to criminal liability, even though the attempt to influence the votes of the employees by making these threats had not been authorized by the corporation.

*By the Court.*—Judgment affirmed.