TOWN OF WASHINGTON, and others, Appellants, v. CITY OF ALTOONA, and another, Respondents.†

*No. 75–10. Argued May 4, 1976.—Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 404.)

† Motion for rehearing denied, without costs, on August 23, 1976.

For the appellants there were briefs by *Thomas Kent Guelzow* and *Guelzow & Aubry, Ltd.*, of Eau Claire, and oral argument by *Jerold E. Aubry.*

There was a joint brief for the City of Altoona by *Betz, LeBarron & Poquette* of Eau Claire, and oral argument by *Frank Betz;* for respondent Roger Grimh by *Garvey, O'Brien, Anderson & Kelly* of Eau Claire, and oral argument by *David G. Anderson.*

For the appellants there was a brief by *Thomas Kent Guelzow* and *Guelzow and Aubry, Ltd.*, of Eau Claire.

There was a joint brief for the City of Altoona by

*Frank E. Betz* and *Betz, LeBarron & Poquette* of Eau Claire, and for Roger Grimh by *David G. Anderson* and *Garvey, Anderson, Kelly & Ryberg, S. C.* of Eau Claire.

HEFFERNAN, J. This case presents the question of whether, in a district required by sec. 6.27 (1), Stats., to keep a registry of voters, nonregistered but otherwise qualified electors are permitted to vote in an annexation referendum. The trial court concluded that registration was not required and, accordingly, set aside an annexation referendum at which the officials of the town of Washington refused to permit nonregistered electors to vote. We conclude that an annexation referendum is an election, and in districts where sec. 6.27 (1), is mandatory voters must be registered.

This litigation arose out of the passage of an ordinance by the city of Altoona annexing to it certain lands that lay in the adjacent town of Washington in Eau Claire county. The passage of that ordinance on November 6, 1974, was preceded by the circulation of an annexation petition, the sufficiency of which is not questioned in these proceedings. Under sec. 66.021 (5), Stats., the annexation is, nevertheless, subject to a referendum procedure. That statute provides that the referendum "shall be held at some convenient place within the town" (sec. 66.021 (5) (a)), and the referendum shall be conducted by the town officials (sec. 66.021 (5) (d)).

A notice of the referendum to be held on December 16, 1974, was published and circulated by the town of Washington. That notice contained the language:

"All qualified registered electors residing in the territory proposed for annexation shall be entitled to vote in the referendum."

On December 16, 1974, the circuit court enjoined the election scheduled to be held that day on the ground that registration of electors was not required. Subsequently,

the town published and circulated a new notice of referendum to be held on December 30, 1974.

The town officials complied with the order of the circuit court in that the notice omitted all reference to the ineligibility of nonregistered voters. However, at the referendum election, election officials of the town of Washington refused to permit "some" otherwise qualified electors to vote on the ground that they were not registered. At that election 124 ballots were cast. Thirty-six favored an annexation and 88 were against. Hence, under the terms of sec. 66.021 (5) (g), Stats., the territory would revert to the town of Washington.

Subsequently, an action was brought to set aside the referendum on the ground that qualified but nonregistered electors had been improperly excluded. On February 3, 1975, the circuit court held that the purported annexation referendum of December 30, 1974, was null and void. The town of Washington was ordered to conduct a new referendum in which qualified voters were to be permitted to vote although they were not registered. It is from this order that the town of Washington appeals.

It is conceded that the town of Washington, under the terms of sec. 6.27 (1), Stats., is a municipality with a population of over 5,000. Sec. 6.27 (1) provides:

"(1) Every municipality over 5,000 population shall keep a registry of electors. Where used, registration applies to all primaries and elections."

Sec. 66.021 (5) (d), Stats., provides:

"(d) *How conducted.* The referendum shall be conducted by the town election officials but the town board may reduce the number of such officials for that election. The ballots shall contain the words 'For annexation' and 'Against annexation' and shall otherwise conform to the provisions of s. 5.64 (2). The *election* shall be conducted as are other town elections in accordance with chs. 6 and 7 insofar as applicable." (Emphasis supplied.)

It would appear, therefore, reading sec. 6.27 (1), Stats., in conjunction with sec. 66.021 (5) (d), that a referendum, which is denominated therein as an "election," is to be conducted in conformance with the registration provisions of sec. 6.27. The trial judge, however, relied upon the provisions of sec. 66.021 (6), which deals specifically with qualifications of persons entitled to vote in a referendum election. That statute provides:

"(6) QUALIFICATIONS. Qualifications as to electors and owners shall be determined as of the date of filing any petition, except that all qualified electors residing in the territory proposed for annexation on the day of the conduct of a referendum election shall be entitled to vote therein. Residence and ownership must be bona fide and not acquired for the purpose of defeating or invalidating the annexation proceedings."

The trial judge emphasized that this latter statute provides:

". . . that all qualified electors residing in the territory proposed for annexation on the day of the conduct of a referendum election shall be entitled to vote therein."

From this he concluded that registration was unnecessary and that bona fide residence on the day of the referendum was sufficient. In addition, the trial judge and the city of Altoona in its brief expressed doubt that an annexation referendum is an election in the sense referred to in sec. 6.27, the registration statute. We conclude that this doubt is without basis in the law. Sec. 66.021 (5) (d), Stats., specifically refers to a referendum as an "election." Moreover, this court, since at least 1906, has held that a referendum is an election and that, whether a vote involves a choice of candidates or a choice of policy, a voting procedure under the statutes is an election. *Hall v. Madison* (1906), 128 Wis. 132, 107 N. W. 31; *Vulcan Last Co. v. State* (1928), 194 Wis. 636, 217 N. W. 412.

Holding, as we do, that a referendum is an election, the question remains whether the provisions of sec. 66.021 (6), Stats., have the effect of mandating that all electors who are "qualified" shall have the right to vote whether registered or not.

The Wisconsin Constitution, as now amended, provides that every person of the age of eighteen or upwards residing in the state for six months preceding any election who resides in an election district shall be deemed a qualified elector, provided, however, that the legislature may set a residence requirement in the voting district not to exceed thirty days.[1]

This constitutional direction is implemented by sec. 6.02 (1), Stats., which provides that any person who has resided in an election district for ten days before an election is an "eligible" elector.

Sec. 6.02 (2), Stats., further demonstrates the legislature's interpretation of the constitutional provision. That statute gives to a state resident eighteen years or older the right to vote in the district in which he was last "qualified" as an elector although he may not vote in his district of residence because of inability to fulfill the ten-day requirement. Sec. 6.10 (3) has an analogous provision.

It is thus apparent that the constitution and the statutes use the term "qualified elector" and "eligible elector" interchangeably. The terms are synonymous. The

---

[1] Art. III, sec. 1, Wis. Constitution, provides in part:

"Every person, of the age of twenty-one years [the age requirement is now 18 years pursuant to the 26th Amendment to the United States Constitution and sec. 6.02 and sec. 6.05, Stats.] or upwards, belonging to either of the following classes, who shall have resided in the state for one year [the residency requirement has been changed to six months pursuant to sec. 6.02] next preceding any election, and in the election district where he offers to vote such time as may be prescribed by the legislature, not exceeding thirty days, shall be deemed a qualified elector at such election."

effect of the constitutional provision is to give the legislature the prerogative of setting the election district residence requirement, but conditions that grant of power by stating that in no case shall more than thirty days residence be required by the legislature.

Under the Constitution, any person whose voting rights are established in accordance with that constitutional mandate is a qualified voter; and, accordingly, those persons who are categorized as eligible electors under sec. 6.02 (1) are qualified electors under the Constitution.

The city of Altoona argues that *Cross v. Hebl* (1970), 46 Wis. 2d 356, 174 N. W. 2d 737, made a distinction between eligible electors and qualified electors, but we fail to see that such distinction was made therein. In any event, the case is not controlling of the instant one, for in *Cross* this court dealt with the eligibility of one who would not reach the age of qualification for office holding until after the earliest time for the circulation of nomination papers.

It should also be pointed out that, although the caption to sec. 6.02, Stats., refers to "Qualifications, general," the terminology in sec. 6.02 (1) is that of "eligible elector."

This court is unable to see any situation in which, under the Constitution and the pertinent statutes, there can be a distinction between an eligible elector and a qualified elector. It is clear that, to be a qualified elector under the Constitution, an elector must reside in the election district ten days prior to the election.

While it is apparently the view of the city of Altoona that one can be a qualified elector without fulfilling the legislature's residence requirement, such view is not supported by the statutes or the Constitution, for under the Constitution a qualified elector must comply with the legislatively imposed residence requirements. An eligible elector and a qualified elector are identical.

In supporting its position that registration was not required in a referendum, the trial judge relied upon the interrelationship between sec. 66.021 (6), Stats., and the registration provision, sec. 6.28. He points out that qualified electors residing in the district *on the day of the election* shall be entitled to vote. He also stated that, where an earlier registration had not been made, under sec. 6.55 (2) (a), an affidavit of late registration must be executed at the latest on the day before the referendum election. The trial judge concluded that, therefore, if a person fulfilled the requirements of the statute by 5 p.m. on the day before, he would be permitted to vote, but if the ten-day residence requirement were not fulfilled until the day of the referendum, the right to vote would be denied. Thus, the trial judge concluded that to require registration would defeat the clear statutory language of sec. 66.021 (6) that the entitlement to vote applies to electors residing in the district on the day of the election.

This interpretation, we believe, is contrary to the intent of the statute, for the affidavit of registration, set forth in sec. 6.33 (2), Stats., requires, not that the voter shall reside in the voting district for at least ten days on the date of the signing of the affidavit, but that the voter *will have resided* in the district ten days on the date of the election.

The city of Altoona also argues that to require registration could work an absurd result, because it would be possible for a petition for a referendum to be signed by the requisite number of electors under sec. 66.021 (2) (b), Stats., none of whom were registered to vote. From this it could be argued, contends the city, that a referendum could be ordered where no one was eligible to vote. Such result is possible, and it is possible that the 20 percent of the electors signing the petition might all be unregistered. We think, however, that this contingency is too remote to deserve serious considera-

tion. *See: State on Complaint of Doerflinger v. Hilmantel* (1867), 21 Wis. 574 (*566), 585 (*578).

Any elector residing in the district who has signed a petition would be eligible for registration. All that is required is the initiative to register. Moreover, it would be absurd to conclude that no one in the district, where registration is required, would be registered. Certainly it is not asking too much to expect those who force the municipality to the expense of a referendum by signing a petition to take the personal step of registering. We see no inconsistency between the registration requirements and the fact that one need not be a registered voter to qualify as an elector in signing a petition for annexation. But, if such an unregistered elector wishes to vote in a referendum which he helped to initiate, he must be registered.

Additionally, there is a substantial difference between the signing of a referendum petition and voting in an election. A petition for referendum merely requests that governmental conduct be subjected to the scrutiny of the voters. The signing or filing of a petition is not a part of a final governmental act, but is merely in furtherance of the citizen's right of petition so that public policy may be ratified or rejected at a formal election. There is no danger of election fraud in the signing of a petition, at least insofar as that document affects the final determination of government policy. If one who signs a petition is not registered and does not register, no substantial harm has been done to democratic process, as those voters who are registered will eventually decide the merits of the proposal. An election, on the other hand, is intended to be final.

██ The purpose of requiring registration prior to an election has repeatedly been held as a legislative imperative to "guard against the abuse of the elective franchise, and to preserve the purity of elections." *State on Complaint of Doerflinger, supra,* page 579

(*572). The purpose is to protect the rights of duly qualified, registered electors to prevent fraud and abuse of the elective franchise and to preserve the integrity of the ballot. *See: State ex rel. O'Neill v. Trask* (1908), 135 Wis. 333, 115 N. W. 823; *State ex rel. Tank v. Anderson* (1927), 191 Wis. 538, 211 N. W. 938; *State ex rel. Wood v. Baker* (1875), 38 Wis. 71; *State ex rel. Cothren v. Lean* (1859), 9 Wis. 254 (*279); *State ex rel. Symmonds v. Barnett* (1923), 182 Wis. 114, 195 N. W. 707.

In view of the principles of public policy set forth in the above cases, it is apparent that the need for controls upon the actual voting process is much more compelling than the need for controls on the petition process.

The city of Altoona claims that it is absurd to require that those who vote be registered but not those who petition. This situation is not unique to annexation referenda. Art. XIII, sec. 12, of the Wisconsin Constitution provides that officers of the state may be subject to recall upon the filing of a petition by qualified electors. Neither that constitutional provision nor sec. 9.10, Stats., requires that such petitioners be registered voters. Yet it is clear beyond all argument that, in the event a special election is subsequently held as a consequence of the recall petition, only registered voters, if registration is required in the district, may participate. This procedural distinction between the right to petition and the right to vote has long been accepted as proper.

We conclude that public policy as set forth by the legislature mandates registration procedures to be used in any municipality which has a population of over 5,000. There is no inconsistency between sec. 66.021 (5) (d) and sec. 66.021 (6), Stats. Sec. 66.021 (5) (d) merely explains sec. 66.021 (6) by pointing out that qualified electors residing in the territory proposed for annexation on the day of the referendum are entitled to vote, but only in accordance with the provisions of ch. 6, which are clearly applicable. Registration does not con-

stitute the qualification of an elector but merely constitutes the legislatively mandated proof that one who seeks to vote is qualified. A voter otherwise qualified must be registered if he wishes to vote in an annexation referendum.

While the city of Altoona has posed other arguments in support of the trial judge's order, we conclude that they are not relevant or persuasive.

▇ The question remains whether a new referendum should be ordered. The trial judge ordered a new election on the grounds that eligible voters were turned away from the polls. If the record showed clearly that all nonregistered voters were denied access to the referendum ballot, we would conclude that the election was conducted properly and reverse the trial judge's order. However, the record and stipulation before us only show that "some" unregistered voters were turned away. Under this stipulation, it is not clear that the correct standards for voting were applied with uniformity. Accordingly, we conclude that the election was invalid and that a new election should be ordered.

We need not, however, conclude that the entire annexation proceedings are totally vitiated, but only the results of the election.

The trial judge properly ordered the town of Washington to conduct a new election and to publish a new notice of election.

We conclude, however, that that portion of the order which provided that the notice of referendum shall contain the language, "that all qualified electors may vote in said referendum, whether registered or not registered," was erroneous and must be reversed.

That portion of the order which restrained the town of Washington and its officers from limiting the right to vote at a subsequent annexation referendum to registered voters is reversed.

That portion of the order which directed that another annexation referendum be conducted on the same question as the referendum election of December 30, 1974, is affirmed.

*By the Court.*—Order reversed in part and affirmed in part; cause remanded for further proceedings not inconsistent with the opinion herein.

The following opinion was filed August 23, 1976.

PER CURIAM. *(On motion for rehearing.)* A new election in this case should be conducted by the Town of Washington among those qualiifed persons residing in the subject area who are eligible to vote on the date of the new election.

Motion for rehearing is denied.