ANTHONY S. EARL, Secretary Department of Natural Resources
You ask two questions relating to voting rights at the annual meeting of public inland lake protection and rehabilitation districts, under ch. 33, Stats. Specifically, you ask whether sec. 33.30(3)(d), Stats., which allows nonresident property owners to vote on approval of certain proposed projects, is consistent with constitutional provisions relating to suffrage. In the event that there are constitutional deficiencies in the current statute, you then ask whether such rights can be properly afforded under Wis. Const. art. III, sec. 1.
It is my opinion that the Legislature does not have the power to confer upon nonresident property owners the limited voting privileges described in sec. 33.30(3)(d), Stats., unless such extension of voting rights to nonresident property owners is first approved in a statewide referendum as required by Wis. Const. art. III, sec. 1.
By ch. 301, Laws of 1973, the Legislature created ch. 33, Stats., concerning public inland lake protection and rehabilitation. The purpose of this chapter, as enunciated in sec. 33.001, Stats., is to establish a program to abate the deterioration of inland lakes and to rehabilitate and preserve those public waters. To achieve these ends the Legislature adopted a scheme whereby local districts would be formed which would, with state financial and technical support and supervision, implement the objectives of the program. Because a significant portion of the properties directly affected and financially burdened by this program are owned by nonresidents, and because the cooperation of those persons is essential to the success of the program, the Legislature sought to provide nonresident property owners with substantial input and control in the formation and management of the districts. Thus, under sec.33.25(1), Stats., nonresident landowners may petition the county for the establishment of a district. Under sec. 33.26(2), Stats., all landowners are entitled to receive notice of public hearings concerning establishment of the district. Nonresident property owners may sit on the district board of commissioners (secs.33.27(1) and 33.28(2), Stats.) and may participate at the annual meeting of the district, pursuant to sec. 33.30, Stats. *Page 34 
Your questions specifically refer to sec. 33.30, Stats., which provides in pertinent part:
(3) The annual meeting shall:
. . .
 (d) Approve or disapprove all proposed projects by the district having a cost to the district in excess of $5000, by vote of the electors and property owners within the district.
My initial observation is that the limited extension of voting rights herein discussed does not infringe upon the local district electors' federal or state constitutional rights of equal protection. Since at least part of the financial burden incurred for a proposed project would ultimately be imposed on local property owners, the Legislature could reasonably conclude that, to the extent it is otherwise constitutionally permissible, meaningful participation in the program should be based on landowner status, as well as permanent residence. The United States Supreme Court has upheld voting classifications based on property ownership where they are reasonably related to legitimate police power goals. See, e.g., Salyer Land Co. v.Tulare Lake Basin Water Storage District, 410 U.S. 719 (1973). Moreover, sec. 33.30, Stats., avoids any potential constitutional infirmity due to the fact that both nonresident property owners and electors may participate and vote at the annual meeting.
The constitutionality of this provision has been called into question because of the limitations on suffrage in Wis. Const. art. III, sec. 1, which provides:
 Every person, of the age of twenty-one [now eighteen] years or upwards, belonging to either of the following classes, who shall have resided in the state for one year next preceding any election, and in the election district where he offers to vote such time as may be prescribed by the legislature, not exceeding thirty [now ten] days, shall be deemed a qualified elector at such election:
(1) Citizens of the United States.
 (2) Persons of Indian blood, who have once been declared by law of congress to be citizens of the United States, any subsequent law of congress to the contrary notwithstanding. *Page 35 
 (3) The legislature may at any time extend, by law, the right of suffrage to persons not herein enumerated; but no such law shall be in force until the same shall have been submitted to a vote of the people at a general election, and approved by a majority of all the votes cast on that question at such election; and provided further, that the legislature may provide for the registration of electors, and prescribe proper rules and regulations therefor.
See, sec. 6.02, Stats.
It is clear that under this section of the constitution, only persons who are permanent residents of this state are authorized to vote in "any election." As a caveat and limitation on this restriction, subsec. (3) authorizes the Legislature to extend suffrage to persons other than those expressly qualified to vote, but that such extensions of suffrage are valid only after they have been approved by a majority of the electorate in a statewide referendum. See 44 Op. Att'y Gen. 106 (1955); 50 Op. Att'y Gen. 50 (1961). In the context of the questions asked herein, sec.33.30(3)(d), Stats., was enacted and implemented without prior approval of the electorate. Therefore, that section is valid only if it does not fall within the definition of an "election."
The term "election," as it relates to the above-enumerated constitutional provision, has never been specifically defined. However, several court cases and opinions from this office assist in determining whether the vote contemplated in sec. 33.30(3)(d), Stats., constitutes an election.
In the early case of Brown v. Phillips, 71 Wis. 239,36 N.W. 242 (1888), the court was confronted with legislation extending the right of suffrage to women to participate in any "election pertaining to school matters." The court there defined election very broadly as "the act of choosing; choice; the act of selecting one or more from others." 71 Wis. at 253. It then concluded that that extension of suffrage included the right to vote for school officials, but implicitly held that "election" was not limited to only the election of officials.
In Hall v. Madison, 128 Wis. 132, 107 N.W. 31 (1906), the court again considered what constituted an election under Wis. Const. art. III, sec. 1. Addressing a legislative act identical in language to that in Brown, the, court determined that a school bond referendum was as much an election as an election of public officials. The court stated, *Page 36 128 Wis. at 138, that "whether it is a choice between alternative policies or a choice between persons, it is equally an election." This conclusion was later quoted with approval in Vulcan Last Co.v. State, 194 Wis. 636, 639-40, 217 N.W. 412 (1928), wherein the court stated: "An `election,' within the meaning of the statutes of this state, includes a referendum vote to decide a question of policy such as the issuance of bonds, . . . just as well as it includes an ordinary election to choose between candidates for public office."
Shortly after the enactment of ch. 33, Stats., the definition of "election" and application of Wis. Const. art. III, sec. 1, was extensively analyzed in 63 Op. Att'y Gen. 391 (1974). The Legislature had requested an opinion on a bill quite analogous to the statute herein discussed, where the right to participate in metropolitan sewage district and town sanitary district bond elections was to be extended to nonresident property owners. This opinion concluded that the extension of voting rights therein considered would not infringe upon the local district electors' federal and state constitutional guarantees of equal protection, but that such rights of suffrage probably could not be extended except in conformity with the procedures delineated in Wis. Const. art. III, sec. 1(3).
I am of the same opinion with respect to sec. 33.30(3)(d). The few state court cases which have sought to define "election" have used very broad, all-encompassing terminology. Quite recently, inTown of Washington v. Altoona, 73 Wis.2d 250, 243 N.W.2d 404
(1976), the court reiterated its holding in Hall and Vulcan, stating at 73 Wis.2d at 254: "[T] his court, since at least 1906, has held that . . . whether a vote involves a choice of candidates or a choice of policy, a voting procedure under thestatutes is an election" (emphasis added).
There can be no doubt that sec. 33.30(3)(d), Stats., is a "voting procedure." Nor can it be doubted that the right to vote therein has been extended to a class not enumerated in Wis. Const. art. III, sec. 1, i.e., nonresident property owners. Consequently, such rights may be extended by the Legislature only pursuant to a statewide referendum as described in Wis. Const. art. III, sec. 1(3).
BCL:CAS *Page 37