CLAPP and others, Appellants, v. JOINT SCHOOL DISTRICT No. 1 (Villages of Hammond and Roberts and Towns of Hammond, Pleasant Valley, Erin, Rush River, Warren, Richmond, and Kinnickinnic) and others, Respondents.

*October 29—November 26, 1963.*

For the appellants there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. P. Knowles*.

For the respondents there was a brief by *Gwin & Fetzner* of Hudson, and oral argument by *John W. Fetzner*.

HALLOWS, J.   The first question is whether the statutory remedy provided by sec. 6.66, Stats., is the exclusive method of contesting a school-district bond referendum when more than a recount is sought.   Relying on *Roberts v. Madison* (1947), 250 Wis. 317, 27 N. W. (2d) 233, the plaintiffs argue a taxpayer has a right to enjoin the misapplication of public funds and the issuance of school bonds pursuant to an illegal referendum authorizing the bond issue constitutes such a misapplication.   The plaintiffs further contend their objections go to the validity of the election, not its results, and consequently the remedy provided by sec. 6.66 cannot be exclusive because the board of canvassers has only ministerial duties and the determination of the validity of the election requires the exercise of judicial power.

Some doubts are expressed concerning the applicability of sec. 6.66, Stats., to school-district referenda, but these are not well-founded.   By sec. 67.05 (6a) (c), Stats., relating to a school-district bond referendum, such election shall be held and conducted and the votes cast, counted, canvassed, and returned as at annual town elections and sec. 6.66 expressly applies to town referendum elections.   This section must, of course, be applied *mutatis mutandis.*   Sec. 6.66 provides whenever any elector who voted in the referendum shall within three days file a verified petition setting forth he voted upon the proposition at the election and the mistake or fraud was committed "in the counting and return of the votes cast . . . or specifying any other defect, irregularity or illegality in the conduct of said election," the board of canvassers shall "proceed to ascertain and determine the facts alleged" and "make correction accordingly and recount the ballots."   Within five days of the determination of the board of canvassers an appeal may be taken to the circuit court.

In *Burke v. Madison* (1962), 17 Wis. (2d) 623, 117 N. W. (2d) 580, we stated the remedy provided by sec. 6.66, Stats., was exclusive and applied to a referendum on annexation. *Burke* was an action to declare invalid an annexation ordinance based upon a referendum, the result of which showed the annexation lost by a tie vote. Evidence was admitted on behalf of the defendant which went behind the certificate of the election result and the trial court determined one of the voters who cast his vote against annexation was ineligible to vote and the correct result of the election was 19 votes for and 18 votes against. The question of the eligibility of a voter and the disqualification of the vote of an ineligible voter were matters affecting the result of the election which the board of canvassers could have corrected upon proper petition by an elector who had voted on the referendum, but no such elector did file a petition. The exclusiveness of the remedy provided by sec. 6.66 was held to exclude any remedy to the city of Madison to challenge "the election result" on the ground of the defect or irregularity alleged.

*Burke* is distinguishable from the present case and not controlling. The issue here is not one of challenging the result of an election but whether the remedy provided by sec. 6.66, Stats., is exclusive for every defect, irregularity, illegality, mistake, or fraud regardless of whether they vitiate the whole election or only go to disqualifying certain votes cast or of qualifying votes disqualified in the original canvass and return and thus affecting only the result of an election. As to defects, illegality, irregularities, mistakes, and fraud having as their immediate effect the disqualification of a ballot or ballots, the remedy provided by sec. 6.66 is exclusive.

The exclusiveness of the remedy does not exceed its purpose or the limits of the result which the prescribed procedure can afford. The section speaks in language of a "mistake or fraud . . . in the counting and return of the votes cast" or of "any other defect, irregularity or illegality in the conduct

of said election," but as to such defects, irregularities, or illegality, the board of canvassers is required "to ascertain and determine the facts" and to "make correction accordingly and recount the ballots . . ." The remedy covers only those matters which are of such a character that the board of canvassers can correct. After such correction, the section contemplates a recount of the ballots which are properly determined valid votes in the election. The statute does not contemplate a judicial determination by the board of canvassers of the legality of the entire election but of certain challenged ballots. It has long been held the duties of the board of canvassers are primarily ministerial in nature and not judicial. *State ex rel. Husting v. Board of State Canvassers* (1914), 159 Wis. 216, 150 N. W. 542; *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249 N. W. 537; 29 C. J. S., Elections, p. 340, sec. 237.

Fraud, illegality, defects, mistakes, and irregularities going to the groundwork of the referendum and its validity as an election are not within the effective scope of the remedy provided by sec. 6.66, Stats., and therefore any remedy on such grounds is not affected by the exclusiveness of the statutory remedy.[1] True, there is an appeal from the board of canvassers to the circuit court but the scope of that appeal is no greater than the duties of the board of canvassers and does not reach a question of the illegality of the election as a whole. We consider the trial court was in error in dismissing the complaint on this ground. However, in its opinion the court also considered in the alternative the defects and irregularities were not of such a nature as to require the election to be declared void.

---

[1] Without deciding, we point out the time within which an action may be commenced to enjoin the issuance of school-district bonds except on constitutional grounds may be shortened to thirty days by the use of the procedure providing for the issuance of the attorney general's certificate of validity. See secs. 14.53 (5a), 67.02 (3), and 67.01 (1), Stats.

The plaintiffs contend the school-district referendum was void because of numerous procedural defects. For the election, the school district was divided into two precincts and most of the defects are concerned with the precinct in the village of Roberts. The election officials failed to file their oath timely and one of the Hammond precinct election officials failed to sign his oath as required by sec. 6.32 (4) (g), Stats. Two persons of the Roberts precinct were appointed election clerks but signed oaths as ballot clerks and indorsed the ballots as ballot clerks. It is claimed all the ballots of the Roberts precinct were improperly indorsed. Sec. 6.36. The polling place at the Roberts precinct was opened twenty minutes late, and the ballot boxes at both precincts were not properly locked as provided in secs. 6.46 and 6.47. The canvassing and the return of the ballots at the Roberts precinct were not done at the polling place but the ballot box was taken to the Hammond precinct to count the ballots. Consequently, the ballot box was not opened in the presence of the election inspectors at the Roberts precinct and no comparison of the poll list with the counting of the ballots was made there, and when made at Hammond all the election officials of Roberts did not attend the canvass. The Roberts precinct tally sheets were not signed by either of the election clerks, nor were the ballots after being counted returned to the boxes and the boxes sealed and returned to the school-district clerk as provided in sec. 6.60 (5). Besides these irregularities in the procedure, no provision was made for absentee voting and it is claimed some residents and taxpayers were denied the right to vote.

We cannot agree with the plaintiffs' argument that this is a case where the election procedure is so riddled with errors and mistakes that substantial doubt is cast upon its result. Many of the statutory provisions relating to elections are directory and substantial compliance therewith is sufficient. *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249

N. W. 537; *Schmidt v. West Bend Board of Canvassers* (1962), 18 Wis. (2d) 316, 118 N. W. (2d) 154.

The oaths were administered to the appointed election officials at both precincts on the morning of the election before voting was permitted and the oaths were signed at that time. This delayed the timely filing of the oaths and the opening of the polls at Roberts twenty minutes. The trial court was correct in considering the appointed officials *de facto* officials. No proof was adduced showing an elector was denied his right to vote. One person who could not vote because of the delayed opening returned later and voted. True, the ballot boxes had no locks but the boxes were inspected before being used, then taped shut and were not opened until after the polls closed and the tabulation process begun. The ballots cast at Roberts were counted at Hammond and the number of ballots counted coincided with the number of electors who voted. Neither the place of counting nor the irregularities in following the procedure for canvassing and return of the ballots had any effect upon the final result of the referendum.

A more-serious objection relates to the indorsement of the ballots used at Roberts. We consider *Ollmann v. Kowalewski* (1941), 238 Wis. 574, 300 N. W. 183, is dispositive of this irregularity. In that case it was held where one ballot clerk indorsed some of the ballots for himself and the other ballot clerk and the remaining ballots were likewise indorsed by the other ballot clerk the votes cast on such ballots were to be counted because sec. 6.41, Stats., was directory and not mandatory. More important, the contention as to these ballots could have been raised under the procedure provided by sec. 6.66 as was done in *Ollmann* and, therefore, the remedy as to this type of defect or irregularity is exclusive. True, a taxpayer as such under the doctrine of *Burke* has no right to

the remedy provided by sec. 6.66; nevertheless, as an elector, if he had voted at the referendum, he could have qualified as one entitled to that remedy.

It cannot be denied there was no provision made for absentee voting. But absentee voting is a privilege, not an absolute right. *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. (2d) 235. We stated in *Petition of Anderson* (1961), 12 Wis. (2d) 530, 107 N. W. (2d) 496, where explicit language does not call for strict compliance, such provisions relating to absentee voting were directory and strict compliance therewith was not required. Whether absentee voting is permitted and should be provided for in a school-district referendum is not material. We do not have a case of a resident demanding an absentee ballot for himself and being refused by the school-district clerk and without such an affirmative proof, the election ought not to be held void if it is considered the furnishing of absentee ballots is mandatory.

Whether these procedural defects are sufficient to void the election must be considered in the light of sec. 5.011, Stats., which provides that Title II of the statutes denominated "Elections" and embracing chs. 5 through 12, Stats., shall be construed so as to give effect to the will of the electors, if that can be ascertained, notwithstanding informality or failure to comply with some of its provisions. The defects and irregularities, which could not be reached by a proceeding under sec. 6.66, do not challenge the result of the referendum and do not permeate the election process so that it can be said the result was not an expression of the will of the voters. The defects, mistakes, irregularities, or illegality in the election procedure must be of such a nature as to cast serious doubt upon the legality of the entire election as an orderly and proper means of ascertaining the will of the people en-

titled to vote. The test of the validity of an election is no greater for a school-district referendum involving a bond issue and a tax than for an election involving public office.

The appellants assign as error an abuse of discretion of the trial court in allowing costs to the defendants. True, the court's opinion said nothing about costs but the conclusions of law provided for them. Findings of fact and conclusions of law when signed by the trial judge become his act. We find no abuse of discretion in allowing costs against the plaintiff taxpayers in an equity suit when they are unsuccessful.

*By the Court.*—Judgment affirmed.