IN RE: JUNE 9, 1988, REFERENDUM ELECTION "SHALL THE AREA COVERED IN THE CHRISTIAN A. DEMMIN ANNEXATION PETITION FILED APRIL 6, 1988, BE ANNEXED TO THE CITY OF STURGEON BAY?"

Mary Ann LOGERQUIST, Appellant,

v.

BOARD OF CANVASSERS FOR the TOWN OF NASEWAUPEE, Appellant.

Christian A. DEMMIN, Eva J. Cisek, John Hannon, Ken Schaefer, and Brian Kocian, Respondents,

v.

BOARD OF CANVASSERS FOR the TOWN OF NASEWAUPEE, Appellant.

Court of Appeals

*No. 88-2255. Submitted on briefs March 31, 1989.—Decided May 16, 1989.*

(Also reported in 442 N.W.2d 551.)

For appellants, Mary Ann Logerquist and Board of Canvassers for the Town of Nasewaupee, there were

briefs filed by *Jeffery M. Weir* of *Pinkert, Smith, Weir, Jinkins & Nesbitt* of Sturgeon Bay.

For respondents there was a brief filed by *Jeffrey J. Gilson* of *Kaftan, Van Egeren, Gilson, Geimer & Gammeltoft, S.C.* of Green Bay.

For City of Sturgeon Bay there was a brief filed by *Chester C. Stauffacher* of Sturgeon Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    This appeal stems from a referendum election regarding annexation to the city of Sturgeon Bay. Mary Ann Logerquist appeals the circuit court's order disqualifying one of ten challenged electors and upholding the board of canvassers' certified election results favoring annexation. The issues are whether sec. 9.01, Stats., post election actions, provides an elector with the opportunity to challenge an elector's eligibility after an election and, if so, whether the court erred in its review of the board of canvassers' findings. Because we conclude that sec. 9.01 provides for post-election elector challenges and that the circuit court did not err in its review, we affirm the order upholding the certified referendum election results in favor of annexation.

In April, 1988, Sturgeon Bay passed an ordinance pursuant to sec. 66.021(2)(a)1, Stats., annexing to the city approximately 430 acres of land located almost entirely in the town of Nasewaupee. Electors in the annexed area requested a referendum election pursuant to sec. 66.021(5), which was held on June 9, 1988. The question on the ballot read: "SHALL THE AREA COVERED IN THE CHRISTIAN A. DEMMIN ANNEXATION PETITION FILED APRIL 6, 1988, BE ANNEXED TO THE CITY OF STURGEON BAY?" The referendum election results were, as certified by the board of canvassers for the town of Nasewaupee, fifty

910

votes in favor of annexation, and forty-six votes against annexation. There was also one pre-election challenged voter who the circuit court later concluded was qualified to vote.[1]

Pursuant to sec. 9.01, Logerquist filed a verified petition with the town clerk of Nasewaupee requesting a recount on the grounds that ten electors were unqualified to vote because they did not meet statutory residency requirements. The relevant portion of sec. 9.01 provides:

> (1)(a)   Any candidate voted for at any election or any elector who voted upon any referendum question at any election may request a recount. The petitioner shall file a verified petition or petitions . . .. Each verified petition shall state that at the election the petitioner . . . voted on the referendum question in issue; that the petitioner is informed and believes that a mistake or fraud has been committed in a specified ward or municipality in the counting and return of the votes cast . . . upon the question; or shall specify any other defect, irregularity or illegality in the conduct of the election.
>
> . . ..
> (5)   . . . (a)   . . . The board of canvassers shall make specific findings of fact with respect to any irregularity raised in the petition or discovered during the recount . . ..

Upon receipt of the petition, the board convened and found that six of the ten challenged electors were not qualified to vote because they did not meet residency requirements pursuant to sec. 6.02 and 6.10, Stats. How-

---

[1]Logerquist does not challenge this voter on appeal. However, because both the board of canvassers and the trial court addressed this pre-election voter's qualifications, we will review the trial court's decision which includes this voter as one of the five qualified voters.

ever, after finding no question regarding the vote tabulation, the board confirmed the certified election results.

Pursuant to sec. 9.01(6), two separate appeals from the board's determination were filed with the circuit court. Logerquist alleged that the referendum election results were significantly tainted and requested the trial court to set aside the certified results and order a new referendum election. Christian Demmin,[2] in his appeal, alleged that the board exceeded its authority by addressing post-election challenges and therefore requested the trial court to set aside the board's findings and affirm the certified election results.

The trial court consolidated both appeals and found that the board did not exceed its authority by addressing post-election challenges. Nonetheless, the trial court found that the board reached its findings erroneously because Logerquist, the challenging elector, failed to meet her burden of proof, and the board did not apply the requisite beyond a reasonable doubt standard to its findings of disqualifications. It concluded that substantial evidence existed only to sustain the disqualification of Brian Kocian. Finally, the trial court upheld the certified referendum election results in favor of annexation. Logerquist appeals this trial court order, pursuant to sec. 9.01(9).

The first issue we address is whether an elector can challenge another elector's qualifications after an election pursuant to sec. 9.01. This requires the construction of sec. 9.01 and several other statutes, which raises a question of law. *See Chomicki v. Wittekind,* 128 Wis. 2d 188, 193, 381 N.W.2d 561, 563 (Ct. App. 1985). As a result, we owe no deference to the trial court's decision.

[2]Eva Cisek, John Hannon, Ken Schaefer, and Brian Kocian were also parties to this appeal.

*Id.* Statutes relating to the same subject matter are to be construed together and harmonized in order to give each statute full force and effect. *Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815, 820 (1979).

Article III, sec. 1, of the Wisconsin Constitution provides that every United States citizen age eighteen or older who is a resident of an election district in Wisconsin is a qualified elector of that district. The legislature, however, may enact residency laws. Wis. Const., art. III, sec. 2(1). Section 6.02(1) implements this constitutional directive by providing that any person who has resided in an election district or ward for ten days before an election is an eligible elector. The purpose of requiring registration prior to an election is to protect the rights of duly qualified, registered voters, as well as to preserve the integrity of the ballot and to prevent fraud and abuse of the elective franchise. *Town of Washington v. City of Altoona,* 73 Wis. 2d 250, 258–59, 243 N.W.2d 404, 409 (1976).

Wisconsin has provided general legislative procedures ensuring pre-election and at-election eligibility challenges. Under sec. 6.48, any registered elector of a municipality may challenge the registration of any other registered elector on grounds that the challenged elector is not qualified to vote. Challenges made under sec. 6.48 require that the "municipal clerk, board of election commissioners or a challenging elector under s. 6.48 demonstrates beyond a reasonable doubt that the person does not qualify as an elector or is not properly registered." Sec. 6.325, Stats. In addition, sec. 6.92 and 6.925 allow an election inspector or any elector to challenge for cause any person known or suspected to be not qualified to vote. Sec. 6.94 and 6.95 set forth the specific procedures to be employed for challenging electors who attempt to

vote. Part of this procedure includes a method to preserve the challenged ballot in the event it is later determined the voter is disqualified or ineligible to vote.

On first impression, it would appear that the legislature allowed only pre-election and at-election elector challenges, especially considering the numerous problems involved with post-election challenges since the contents of the challenged ballot cannot be satisfactorily determined. Moreover, the language of sec. 9.01 provides no real guidance in answering the issue of whether post-election challenges were legislatively intended. The relevant portion of sec. 9.01(1)(a) indicates that each verified petition shall state that the petitioner is informed and believes that a mistake or fraud has been committed . . . in the counting and return of the votes . . .; or shall specify any other defect, irregularity or illegality in the conduct of the election."

However, supreme court cases interpreting sec. 9.01 indicate that post-election disqualification challenges are procedurally valid. In *Town of Burke v. City of Madison,* 17 Wis. 2d 623, 117 N.W.2d 580 (1962), an annexation referendum election was held whereby the certified election results revealed nineteen votes for annexation and nineteen votes against annexation. The town opposing annexation requested a recount whereby the trial court determined that one of the thirty-eight electors was ineligible to vote because he did not meet the requisite residency requirements. The trial court also found that the ineligible elector cast his vote against annexation and that the correct election results were nineteen votes for annexation and eighteen votes against annexation. The town opposing the annexation appealed.

The supreme court reversed the trial court and reinstated the certified election results because, "no elector

residing in the affected territory filed any petition with the election inspectors, who constituted the board of canvassers, challenging the method of holding the election, the eligibility of any voter, or the count of the ballots by the canvassers," pursuant to sec. 6.66, Stats. (1957).[3] *Burke,* 17 Wis. 2d at 628, 117 N.W.2d at 582. The only challenger in that instance was the town opposing annexation.

The supreme court reasoned that the legislature purposely excluded municipalities from challenging referendum results because the residents in the affected areas were the real parties interested in the proposed boundary alterations. *Id.* at 634, 117 N.W.2d at 586. The supreme court invalidated the post-election challenge not because an elector could not challenge an elector's eligibility after an election, but simply because no elector challenged the results.

In *Clapp v. Joint School Dist. No. 1,* 21 Wis. 2d 473, 124 N.W.2d 678 (1963), the supreme court held that sec. 6.66[4] (now sec. 9.01) provides the exclusive remedy for challenges that affect election results. It concluded that:

---

[3] Section 6.66, Stats. (1957), cited in *Burke,* read in part:

> (1)   Whenever any candidate, or any elector who voted upon any constitutional amendment or upon any proposition, voted for at any election, . . . shall file . . . a verified petition setting forth . . . that he voted upon any such constitutional amendment or proposition at said election, and that he is informed and believes that a mistake or fraud has been committed in specified precincts in the counting and return of the votes cast for the office for which he was a candidate, or upon the matter voted upon, or specifying any other defect, irregularity or illegality in the conduct of said election.

Section 1, ch. 666, Laws of 1965, repealed and recreated chs. 5 through 10. Section 6.66 was replaced by sec. 9.01, which remains substantially the same.

[4] Note, *supra* note 3, for legislative history of sec. 6.66, now sec. 9.01.

The question of the eligibility of a voter and the disqualification of the vote of an ineligible voter were matters affecting the result of the election which the board of canvassers could have corrected upon proper petition by an elector who had voted on the referendum [annexation] . . ..

. . . As to defects, illegality, irregularities, mistakes, and fraud having as their immediate effect the disqualification of a ballot or ballots, the remedy provided by sec. 6.66 [9.01] is exclusive.

. . . The section speaks in language of a "mistake or fraud . . . in the counting and return of the votes cast" or of "any other defect, irregularity or illegality in the conduct of said election," but as to such defects, irregularities or illegality, the board of canvassers is required "to ascertain and determine the facts" and to "make correction accordingly and recount the ballots . . .." . . . After such correction, the section contemplates a recount of the ballots which are properly determined valid votes in the election. The statute does not contemplate a judicial determination by the board of canvassers of the legality of the entire election but of certain challenged ballots.

*Id.* at 477-78, 124 N.W.2d at 681.

█

Thus, *Clapp* stands for the proposition that post-election eligibility challenges pursuant to sec. 9.01 are permissible provided they may affect the election results. Therefore, we conclude that the board of canvassers did not exceed its authority when it examined the qualifications of ten electors subsequent to the election, in response to Logerquist's petition filed under sec. 9.01.

Because *Burke* and *Clapp* stand for the proposition that post-election eligibility challenges under sec. 9.01 are valid, we must determine whether the trial court

erred in its review of the board's findings. Here, the trial court found the board of canvassers reached its findings erroneously for two reasons. First, the challenging elector, Logerquist, failed to meet her burden of proof to disqualify the ten challenged electors and, second, the board did not apply the proper standard, beyond a reasonable doubt, when it considered the evidence. Logerquist argues that the trial court's decision was erroneous.

We conclude that the relevant chapters involving elections, ballots, and post-election actions shed some light on the questions of who bears the burden of proof and the requisite standard to determine the evidence under sec. 9.01. Section 6.48, which governs pre-election registration challenges, provides that the challenging elector must demonstrate beyond a reasonable doubt that the person does not qualify or is not properly registered. *See* sec. 6.325, Stats. Also, sec. 6.95, which governs election challenges at the polls, provides that the beyond a reasonable doubt standard specified in sec. 6.325 shall be used to determine the validity of challenged ballots. Section 9.01, which governs post-election eligibility challenges, does not indicate, however, who bears the burden of proof and the requisite standard of proof for determining the evidence. Because we are required to harmonize related subject matter statutes, we conclude that the burden of proof rests on the challenger, and the requisite standard of proof is beyond a reasonable doubt, whether the challenge occurs prior to the election, at the polls, or after the election. *See Glinski,* 88 Wis. 2d at 519, 276 N.W.2d at 820.

The challenging elector must prove beyond a reasonable doubt that the challenged elector is not qualified to vote and the trier of fact, here the board of canvassers,

must determine whether the evidence sufficiently meets this burden. The board's findings are then reviewed for substantial evidence to support the trier of fact's findings. Section 9.01(8) provides the court's scope of review of board findings:

> Unless the court finds a ground for setting aside or modifying the determination of the board of canvassers, it shall affirm the determination. The court shall separately treat disputed issues of procedure, interpretations of law and findings of fact . . .. The court shall set aside or modify the determination if it finds that the board of canvassers has erroneously interpreted a provision of law and a correct interpretation compels a particular action. If the determination depends on any fact found by the board of canvassers, the court may not substitute its judgment for that of the board of canvassers as to the weight of the evidence on any disputed finding of fact. The court shall set aside the determination if it finds that the determination depends on any finding of fact that is not supported by substantial evidence.

Thus, on review in this case, the question is whether the board's findings are supported by substantial evidence.

It is undisputed that neither the challenging elector, Logerquist, nor an attorney on her behalf, appeared at the board's hearing to prove the ten challenged electors were not qualified to vote. The trial court concluded that the board improperly shifted the burden of proving residency to the challenged electors. The trial court also concluded that the board did not apply the beyond a reasonable doubt standard when it considered the evidence:

> The transcript shows that the six voters did not produce their income tax returns, and the board held this fact against them. I am astonished that the

board considered facts not in evidence . . . I find that the Board of Canvassers reached its decision erroneously because it clearly failed to apply the proper standards to the evidence and because it placed the burden of proving residency upon the six electors in question.

Furthermore, the trial court concluded that the board's finding that five of the electors were disqualified to vote was not supported by substantial evidence. Substantial evidence did exist, it concluded, to support the board's finding that disqualified Brian Kocian.

The record indeed reveals that Logerquist failed to meet her burden of proof and that the board failed to consider evidence in light of the beyond a reasonable doubt standard. In Logerquist's absence, the board inadvertently placed the burden on the challenged electors to prove their residency qualifications as electors. Furthermore, even though the board asked relevant questions, the evidence adduced at the hearing does not fulfill the requisite burden. The six disqualified electors all testified that they had resided in the proposed annexation district more than ten days before the election and stated their intentions to make the district their home and to continue to live there after the election. It is true that some of the electors did not produce their income tax returns or vehicle registrations at the hearing. The board disqualified the electors because their qualifications were questionable. We agree with the trial court that the board failed to consider the evidence in light of the beyond a reasonable doubt standard. We agree with the trial court that this evidence is not sufficient to support disqualifying five of the six disqualified electors.

919

However, substantial evidence exists to sustain the finding that Brian Kocian was not a resident and therefore an unqualified elector. Kocian, unlike the other five disqualified by the board, was a student who temporarily resided in Nasewaupee during the school year but whose permanent residency was in Greenleaf, Wisconsin. The evidence adduced at the hearing is sufficient to disqualify Kocian.

Finally, the trial court upheld the certified referendum election results in favor of annexation because the board erroneously disqualified five electors and because the board did not question the vote tabulation as certified. We affirm this decision. Even with one disqualified elector, a new referendum election would not change the results in favor of annexation. Moreover, one disqualified elector does not taint the result as Logerquist asserts on appeal. The certified election results of fifty votes for annexation and forty-six votes against annexation stand.

*By the Court.*—Order affirmed.