PER CURIAM.
¶1 Ryan Sherley, pro se, appeals a circuit court order setting aside a determination by the St. Croix County Board of Canvassers ("the Board") that Sherley was the winner of the April 3, 2018 election for St. Croix County Supervisor, District 13.[1] The court concluded that a vote cast in Sherley's favor should have been excluded from the Board's recount and, further, that the Board conducted a drawdown contrary to the procedure set forth in WIS. STAT. § 9.01(1)(b). Accordingly, the court reversed the results of the Board's recount and ordered the Board to perform a new recount.
¶2 Sherley contends the circuit court lacked jurisdiction to review both the excluded ballot and the Board's recount procedures. In the alternative, he argues that the court erred by excluding the contested ballot and by determining that the Board failed to follow statutorily-prescribed recount procedures. We reject his arguments and affirm.
BACKGROUND
¶3 Ryan Sherley and Scottie Ard were candidates for election on April 3, 2018, to the District 13 seat on the St. Croix County Board of Supervisors. At the time of the April 3 county supervisor election, District 13 was located wholly within the City of New Richmond, Wisconsin. District 13 was comprised of six of New Richmond's twelve wards-specifically wards 4, 5, 6, 10, 11 and 12.[2] The six remaining New Richmond wards comprised the District 12 seat on the St. Croix County Board of Supervisors.
¶4 New Richmond grouped its twelve wards into six reporting units, each representing two wards.[3] Two of these reporting units-Unit 3-4 and Unit 9-10-had one ward that voted for the District 12 seat and one ward that voted for the District 13 seat. All remaining reporting units were comprised of two wards, both of which contained voters who were to vote for the same county supervisor seat.
¶5 The Board met on April 9, 2018, to certify the April 3 election results for the District 13 seat. The initial vote count for the District 13 seat resulted in a tie, with 213 votes each for Sherley and Ard. To break this tie, the Board drew a name "by lot," as directed by WIS. STAT. § 5.01(4)(a), and Ard's name was selected. Accordingly, the Board declared Ard the winner of the District 13 seat. Sherley immediately petitioned for a recount, in accordance with WIS. STAT. § 9.01, and the Board duly conducted a recount on April 11, 2018.
¶6 The Board began its recount by counting the numbers of voters and ballots cast in the county supervisor elections in each reporting unit. In Unit 3-4, the Board discovered a discrepancy, as ward 3 had seventy-six voters on its poll list but only seventy-five ballots cast for the District 12 seat. In other words, there was one fewer ballot cast in the county supervisor election than there were registered ward 3 voters who participated in the April 3 election. Ward 4, in contrast, had one more ballot cast for the District 13 seat than the number of registered ward 4 voters who participated in the April 3 election: there were sixty-two voters on the poll list but sixty-three ballots were cast for the District 13 seat.
¶7 The Board investigated and, according to the recount minutes, determined that an "[e]lection official issued an ExpressVote[4 ] ballot to voter. Ballot was marked as Ward 3. Voter cast the ballot in Ward 4 for County Supervisor District 13." In other words, the Board determined that a voter who did not live in a District 13 ward cast a vote for the District 13 seat. The Board subsequently identified the ballot in question and decided to count it in Sherley's favor. The parties refer to this particular ballot as "the Sherley ballot," and we follow suit.
¶8 Turning to Unit 5-6, the Board discovered that although there were 104 registered voters in wards 5 and 6 who participated in the April 3 election, there were only 103 ballots cast for the District 13 seat. The Board's investigation determined that a Unit 5-6 voter had mistakenly received a Unit 1-2 ExpressVote ballot and, consequently, had mistakenly voted for the District 12 seat.
¶9 The Board also discovered discrepancies in Units 9-10 and 11-12. In Unit 9-10, ward 10 (a District 13 ward) had five more ballots cast for the District 13 seat than it had registered voters who participated in the April 3 election. Conversely, ward 9 (a District 12 ward) had five fewer ballots cast for the District 12 seat than it had registered voters who participated in the election that day. However, unlike in Unit 3-4, the Board could not identify which specific ballots in the county supervisor elections were miscast in Unit 9-10 because poll workers failed to write down ward numbers on "some, but not all ExpressVote ballots." As to Unit 11-12, the Board discovered there were 201 registered voters from wards 11 and 12 who participated in the April 3 election, but only 199 ballots cast for the District 13 seat.
¶10 Ultimately, the Board determined that there were 443 total ballots cast in the District 13 election, but only 440 total voters on the District 13 wards' poll lists from the April 3 election. In other words, there were three more ballots cast in the District 13 election than there were participating voters who were eligible to vote for the District 13 seat that day. District 12, meanwhile, had three fewer ballots cast, 445, than its number of participating voters eligible to vote for the District 12 seat, 448. Thus, although there were discrepancies in the voter-to-ballot ratio in the individual districts, New Richmond as a whole had a perfect ballot-to-voter match for the county supervisor elections: 888 eligible, participating voters and 888 ballots cast.
¶11 The Board then sought advice from the Wisconsin Elections Commission ("the Commission") on how to proceed, specifically inquiring as to whether it should perform a drawdown.[5] The Commission advised against doing so, explaining that "[y]ou only draw down ballots when you cannot explain why you have more ballots than voters." The Commission stated that criterion was not met because there was a "reasonable certainty that there were three voters who should have voted in District 12, but were given a District 13 ballot on accident."
¶12 Nevertheless, one Board member subsequently moved to conduct a drawdown. Ard objected, arguing that the recount had confirmed that there was a tie. Over this objection, by a 2-1 vote, the Board approved the motion. Further, the Board decided to conduct the drawdown from all 443 ballots cast in the District 13 election, as opposed to from only those District 13 wards where the number of ballots exceeded the number of voters on the poll lists from that day. Consequently, the Board placed all 443 ballots in a bag and drew out three ballots: two for Ard and one for Sherley. Thus, the Board declared Sherley the winner of the District 13 seat by an updated vote count of 212 to 211.
¶13 Ard appealed the Board's decision to the circuit court, pursuant to WIS. STAT. § 9.01(6). She argued that the Board erred by counting the Sherley ballot, as it was miscast in the District 13 seat election by a District 12 voter. Further, she contended the Board failed to follow proper statutory recount procedures by not conducting its drawdown on a ward-by-ward basis and only in the wards where there were more ballots cast than there were voters eligible to participate in the county supervisor election that day.
¶14 Sherley, relying on WIS. STAT. § 9.01(8), objected to the circuit court's jurisdiction to hear Ard's appeal. He argued that Ard had "waived the right" to make her arguments before the court because she "failed to object or failed to offer evidence of a defect or irregularity during the recount." The court rejected this argument, concluding that Ard had, in fact, objected to the Board's recount procedure. Moreover, the court concluded that under Clifford v. School District of Colby , 143 Wis. 2d 581, 421 N.W.2d 852 (Ct. App. 1988), any determination made by the Board regarding a ballot, election process, or recount procedure-whether specifically objected to by a party or not-sufficiently preserves the issues for review.
¶15 Regarding the merits of Ard's appeal, the circuit court concluded that the Sherley ballot should not have been counted. The court reasoned that, based on the Board's finding that the person who cast the ballot was a District 12 voter, the ballot was not cast by a "qualified elector" of District 13. In addition, the court concluded that the Board erred by conducting its drawdown from all District 13 ballots, rather than on a ward-by-ward basis for affected wards. As a result, the court set aside the Board's declaration that Sherley was the winner of the election and remanded the case to the Board for a new recount. Sherley now appeals.
STANDARD OF REVIEW
¶16 Our review of recount proceedings presents a mixed question of fact and law. See WIS. STAT. § 9.01(8)(b) ; see also Carlson v. Oconto Cty. Bd. of Canvassers , 2001 WI App 20, ¶5, 240 Wis. 2d 438, 623 N.W.2d 195 (2000). The Board is the finder of fact, and we will accept its findings as long as they are supported by substantial evidence. DeBroux v. Board of Canvassers for the City of Appleton , 206 Wis. 2d 321, 328, 557 N.W.2d 423 (Ct. App. 1996). However, the interpretation and application of statutes are questions of law that we review independently of the Board and the circuit court. See Carlson , 240 Wis. 2d 438, ¶5.
¶17 When interpreting a statute, our objective is to determine what the statute means so that it may be given its full, proper, and intended effect. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Our analysis begins with the plain language of the statute, and if a plain meaning is evident from that language, we ordinarily stop the inquiry. Id. , ¶45. In addition, statutory language must be interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Id. , ¶46.
DISCUSSION
I. Jurisdiction
¶18 On appeal, Sherley first renews his argument that the circuit court did not have "jurisdiction" to hear Ard's appeal. WISCONSIN STAT. § 9.01(6) states that a party "aggrieved by [a] recount may appeal to circuit court." Section 9.01(8) then sets forth the scope of the court's review, providing in relevant part that:
The court may not receive evidence not offered to the board of canvassers or the commission chairperson or the chairperson's designee except for evidence that was unavailable to a party exercising due diligence at the time of the recount or newly discovered evidence that could not with due diligence have been obtained during the recount, and except that the court may receive evidence not offered at an earlier time because a party was not represented by counsel in all or part of a recount proceeding. A party who fails to object or fails to offer evidence of a defect or irregularity during the recount waives the right to object or offer evidence before the court except in the case of evidence that was unavailable to a party exercising due diligence at the time of the recount or newly discovered evidence that could not with due diligence have been obtained during the recount or evidence received by the court due to unavailability of counsel during the recount.
Section 9.01(8)(c). Sherley contends that under this statutory provision, "[o]bjections are required to preserve matters for appeal." Therefore-based on his claim that Ard did not adequately object to the "validity" of the Sherley ballot or to the Board's recount drawdown procedure-he argues "the circuit court had no jurisdiction and should have dismissed the case."
¶19 We reject Sherley's contention that a party must object to a determination of, or the procedure used by, the Board to preserve the issue for appeal because it is contrary to our decision in Clifford . In that case, a candidate for a position on the Board of Education allegedly failed to object to a board of canvassers' decision to disallow two ballots cast for her. Clifford , 143 Wis. 2d at 582. On appeal, we determined that WIS. STAT. § 9.01(8)"does not require an objection" to preserve a determination of a board of canvassers for appeal. Clifford , 143 Wis. 2d at 582-83. We reasoned:
The purpose of sec. 9.01(8) entitled "Scope of Review" is to narrow the circuit court review of the board of canvassers' actions. A challenge to a ballot, the election process or the recount procedure, whether by one of the candidates or the board itself , sufficiently preserves the issue for circuit court review. Minutes of the recount proceedings and the reasons for the board's determination become part of the record and reviewable by the circuit court. This prevents the circuit court from becoming a "super" board of canvassers free to entertain any challenges to the election process or the recount procedure, whether raised before the board of canvassers or not.
Id. at 588 (emphasis added).
¶20 Despite our decision in Clifford , Sherley still argues that "not having to object to a determination does not alleviate a party from having to have first made an objection to the matter that resulted in a determination." We disagree, as this argument ignores the plain language in Clifford stating that a challenge by "the board itself" to a ballot, the election process or recount procedure preserves the issue for review. Stated differently, WIS. STAT. § 9.01(8) does not require that a party object to any matter that resulted in a board of canvassers' determination; rather, § 9.01(8) merely prevents a party from raising issues or evidence in the circuit court that were not before the Board.
¶21 In this case, the record plainly demonstrates that both the Sherley ballot and the proper drawdown procedure were issues before the Board and were therefore issues preserved for review. Regarding the Sherley ballot, the minutes of the April 11 recount state: "Election official issued an ExpressVote ballot to voter. Ballot was marked as Ward 3. Voter cast the ballot in Ward 4 for County Supervisor District 13. Vote counted for Sherley."
¶22 As to the proper drawdown procedure, the Board voted on whether to conduct its drawdown from all District 13 ballots or on a ward-by-ward basis-with the district-wide basis winning by a two-to-one margin, over Ard's objection. A contested vote on which procedure to follow clearly shows that the issue of the proper procedure was before the Board. Accordingly, we conclude that both issues raised by Ard in the circuit court and in her appeal were sufficiently preserved for judicial review.
II. The Sherley ballot
¶23 Sherley next contends that the circuit court erred in deciding the Sherley ballot should have been discarded by the Board during its recount. Article III, section 1 of the Wisconsin Constitution provides that "[e]very United States citizen age 18 or older who is a resident of an election district in this state is a qualified elector of that district." By extension, a nonresident of an election district is a nonqualified elector of that district. See Logerquist v. Board of Canvassers for Town of Nasewaupee , 150 Wis. 2d 907, 920, 442 N.W.2d 551 (Ct. App. 1989).
¶24 Sherley argues that the Sherley ballot should have been counted in the District 13 supervisor race because it is undisputed that the voter who cast the Sherley ballot was a "fully qualified Wisconsin voter" and "was an innocent party to what occurred here"-i.e., a District 12 voter casting a ballot in the District 13 election.[6] Further, Sherley argues that because "honoring voter intent is paramount[,]" we should honor the clear intent of the voter who cast the Sherley ballot by counting his or her vote.
¶25 In support of his voter intent argument, Sherley points to our supreme court's statement that "[a] ballot legally cast cannot be rejected if it expresses the will of the voter." Ollmann v. Kowalewski , 238 Wis. 574, 578, 300 N.W. 183 (1941). Sherley's reliance on Ollmann is misplaced. In Ollmann , 305 ballots were not initialed separately by two ballot clerks, as was required by statute. Id. at 576-77. Instead, one clerk placed both his own initials and those of his fellow clerk on the challenged ballots. Id. The Ollmann court refused to discount these ballots, concluding that "not to count [an elector's] vote for no fault of his [or her] own" would be an unconstitutional deprivation of the right to vote. Id. at 578. Moreover, the court stated that "any statute that denies a qualified elector the right to vote is unconstitutional and void." Id. (emphasis added).
¶26 The critical difference between Ollmann and this case is that, here, the voter who cast the Sherley ballot did not have a constitutional right to vote in the District 13 race. As explained above, a voter is only a qualified elector in the election district in which he or she resides. Therefore, the will of the voter who cast the Sherley ballot is irrelevant-because the ballot was not legally cast in the District 13 election. See Logerquist , 150 Wis. 2d at 920. Consequently, the circuit court did not err by concluding that the Sherley ballot should not have been counted during the Board's recount.
III. Recount Procedure
¶27 Sherley next argues that the circuit court erred in determining that the Board should have conducted its drawdown on a ward-by-ward basis for only those wards where there were more ballots cast for the District 13 seat than there were voters eligible to participate in the county supervisor election that day. WISCONSIN STAT. § 9.01 governs recount proceedings. See DeBroux , 206 Wis. 2d at 328. Subdivision (1)(a)3. requires that a party seeking a recount "specify each ward, or each municipality where no wards exist, in which a recount is desired."[7] After a party has done so, the statute directs that "[t]he recount shall proceed for each ward or municipality as follows ...." Sec. 9.01(1)(b) (emphasis added). Subdivision (1)(b)4. then provides "detailed directions" on how to reconcile discrepancies between the number of ballots cast and eligible voters, up to and including, if necessary, a drawdown. See DeBroux , 206 Wis. 2d at 329.
¶28 It is undisputed that the Board conducted a drawdown under WIS. STAT. § 9.01(1)(b) 4.e., and that it did so with ballots from all six District 13 wards in its ballot bag. On appeal, Sherley contends that the Board's method was in accordance with statute. He argues that under § 9.01(1)(b), "votes [are to] be counted by ward," but, in the case that a drawdown is necessary, "the final drawdown [should] be from all votes in all wards within the District."
¶29 Sherley provides no citation to legal authority to support his argument. Instead, he points to the fact that the Board relied on "legal advice" from the St. Croix County corporation counsel in deciding to conduct the drawdown on a district-wide basis. However, as we independently interpret and apply the election statutes as a matter of law, the legal opinion of the corporation counsel is neither binding nor entitled to any deference on appeal. See Carlson , 240 Wis. 2d 438, ¶5.
¶30 Here, we conclude that a plain reading of WIS. STAT. § 9.01(1)(b) indicates that the entire recount procedure, up to and including a drawdown, is to proceed on a ward-by-ward basis. Again, the statute states that a recount "shall proceed for each ward." Sec. 9.01(1)(b). The statute then sets forth a step-by-step process by which to ensure that the number of ballots matches the number of voters in each ward. At no point does the statute indicate that the drawdown should be conducted in a manner different from the rest of the recount procedure, and, as such, it directs that a drawdown, if necessary, "shall proceed for each ward."
¶31 In addition to being compelled by the statute, we agree with Ard that a ward-by-ward drawdown is preferable to a district-wide drawdown because it avoids unnecessarily disenfranchising voters in wards where there were no voting irregularities. For example, if only one ward in a six-ward district had more ballots than voters, but a board of canvassers conducted a district-wide drawdown, those five wards in which there were perfect ballot-to-voter matches would unnecessarily be exposed to having ballots drawn out and discarded.
¶32 To be sure, we recognize that any drawdown will necessarily result in some voters being disenfranchised by having their ballots cast out. However, limiting the pool of potentially disenfranchised voters to only those wards where voting irregularities occurred avoids arbitrarily exposing voters in wards where there is no indication of error to disenfranchisement. This circumscription of the pool of potentially disenfranchised voters adheres to our supreme court's long-standing guidance that "[i]n construing statutes regulating elections, courts must ever keep in mind that 'the object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors and not to defeat them.' " State ex rel. Tank v. Anderson , 191 Wis. 538, 539-40, 211 N.W. 938 (1927) (citation omitted).
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

This is an accelerated appeal under Wis. Stat. Rule 809.20 (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

A ward is "a town, village or city subdivision created for the convenience of the electors therein and to facilitate the division of such municipalities into election districts of substantially equal population numbers along common boundaries observing the community of interest of existing neighborhoods and other settlements." Wis. Stat. § 5.02(25).

A reporting unit is "a ward or combination of wards that reflect the way election results are transmitted to school districts, the county, and the Wisconsin Elections Commission." See Election Day Manual for Wisconsin Election Officials , Wisconsin Elections Commission, 38, https://elections.wi.gov/sites/electionsuat.wi.gov/files/2019-01/Election% 20Day% 20Manual% 20% 282018-10% 29.pdf (last visited Apr. 22, 2019).
In this opinion, we will refer to the reporting units by the term "Unit" followed by the ward numbers that comprise a specific reporting unit. For example, Unit 3-4 refers to the reporting unit comprised of ward 3 and ward 4.

An ExpressVote "is a universal voting system designed for use by all voters. Voters can use [a] touchscreen to make their ballot choices .... When a voter has finished their ballot, the machine will print their marked ballot card which can then be placed in the tabulator or ballot box." See ExpressVote , Wisconsin Elections Commission, https://elections.wi.gov/voters/accessibility/accessible-voting-equipment/express-vote (last visited Apr. 22, 2019).

A drawdown is a means by which, pursuant to Wis. Stat. § 9.01(1)(b)4., a board of canvassers "randomly remove[s] a number of ballots in order to reconcile" the number of ballots cast in an election to the number of voters eligible to vote in the election. See DeBroux v. Board of Canvassers for the City of Appleton , 206 Wis. 2d 321, 329, 557 N.W.2d 423 (Ct. App. 1996).

We note that Sherley asserts that "[w]e do not know if [the ward 3 designation on the Sherley ballot] was a correct notation-or if a mistake may have been made." To the extent that Sherley invites us to speculate as to whether a mistake may have been made in the marking of the ward number on the Sherley ballot, we decline to do so. As noted above, we must accept the Board's factual determination that the Sherley ballot was cast by a ward 3, District 12 voter as long as that finding is supported by substantial evidence. See DeBroux , 206 Wis. 2d at 328. The appellate record contains a copy of the Sherley ballot, which is marked ward 3, but nevertheless contains a vote for the District 13 seat. As such, the Board's determination is supported by substantial evidence.

In his recount petition, Sherley specified that he was seeking a recount in all six District 13 wards.